[Civ. No. 20184.   First Dist., Div. Three.   Sept. 7, 1962.]

PRESTON LOW, Plaintiff and Respondent, v. COLEMAN H. WHEELER et al., Defendants and Appellants.

King, Miller, Anderson, Nash & Yerke, Ralph H. King, Fredrick A. Yerke, Jr., Jean P. Lowman, Falk, Johnson & Cleland and Russell A. Johnson for Defendants and Appellants.

Robert Stanton Rose for Plaintiff and Respondent.

DEVINE, J.—Plaintiff obtained, on verdict of a jury, judgment against the three defendants who are appellants herein, in amount $28,012.50. The action is founded on alleged conspiracy of the defendants, as directors and dominant stockholders of Ukiah Pine Lumber Company, a California corporation, to defraud plaintiff as a minority stockholder.

### Facts

Statement of the facts is divided into two parts in order to facilitate discussion of the permissibility of the amendment to conform to proof, the first part containing facts relating to conspiracy to lessen the value of plaintiff's stock, the subject of the action at the time the trial commenced; and the second part embracing facts connected with the nondisclosure of the offer to purchase, the subject of the cause stated in the amendment to conform to proof. In each case, the facts are stated most favorably to respondent.

### Part One

There were but seven stockholders. The three defendants held 750 shares, and the Low family, 250 shares. Prior to the negotiations which led to dissolution of the corporation, defendants had done the following acts which were inimical to plaintiff's interest as a minority stockholder: (1) They refused to declare dividends, despite plaintiff's insistence, in years in which the company made good profits, on the premise that the company owed them, defendants, on loans which they had made to the company at 7 per cent, although bank loans at 5½ per cent were available. (2) By withholding dividends, defendants caused their preferred stock to acquire

voting status, under the articles of incorporation, and defendants used this voting power to remove plaintiff from the board of directors, and elected no one from his family, despite an agreement previously made on consideration of the dismissal of a lawsuit by plaintiff's mother, as another minority stockholder, that the Low family would have a director so long as defendant Wheeler remained a stockholder. (3) Defendants reduced the number of directors from five to three, and defendant Wheeler testified that the objective was to prevent Preston Low from ever becoming a member of the board even with cumulative voting of the Lows' stock. (4) Defendants Wheeler, father and son, told plaintiff that dividends would not be paid unless plaintiff agreed to conversion of the loans made by the Wheelers to the company to common stock, at such a valuation that plaintiff's interest would have been greatly reduced. Plaintiff mentioned to Wheeler, Sr., that if there were an increase in the shares of common stock under the conversion plan, he would like to interest his father-in-law, a resident of Philadelphia, in subscribing, and Wheeler, Sr., replied that he would not allow any "eastern money" in the corporation. Wheeler told Low that the conversion would have to be on his, Wheeler's, own terms. Wheeler, Sr., told plaintiff that he would get nothing from the company unless it was sold, that the company was being run by him for the benefit of Wheeler's family.

Plaintiff testified that he told Wheeler, Sr., that he would be obliged to tell the prospective purchaser of his situation in the company and of defendants' acts and attitude, and of Wheeler's insistence on increasing the number of common shares by conversion of preferred, and that Wheeler answered that if plaintiff sold to some one acceptable, it would be all right. Plaintiff testified that he was obliged to divulge to a prospective purchaser, Harold Trimbull, the difficulties he was having with the majority, and that Trimbull replied that in the event of his purchase he would be in the same position, and ended the negotiations.

Defendants were interested from time to time in acquiring the Lows' stock, and endeavored to get options from the Lows that in event deals for sale of the corporation fell through, the Lows would sell their shares to defendants at specified prices, but the Lows consistently refused to give such options.

At the time of the commencement of the trial, the facts set forth above were the salient ones on which plaintiff relied.

There were denials, in defendants' answer, of conspiracy to reduce the value of plaintiff's stock, and defendants took the position that their acts were those in the exercise of business judgment.

The acts recited above may have reduced the value of plaintiff's stock, but the proof and measure of damages would have been difficult. The measure of damages was obtained only by the jury's consideration of the facts stated in Part Two, below.

### Part Two

Between the time of the filing of the original complaint and the time of trial, the facts occurred which are contained in this part of the recital of facts, and these facts were made the subject of an amendment to conform to proof: (1) Frank M. Crawford, an owner of timberland near to that of the corporation, was interested in purchasing all of the assets of Ukiah Pine Lumber Company. He had been advised by his attorney that it would be better to purchase all of the assets than to purchase all of the shares, and he and an associate, Mr. Maize, attempted to talk the defendants into a sale of assets. If all of the corporate assets had been sold, plaintiff would have had a pro rata share thereof. Mr. Maize testified that the value he placed on the stock, at the commencement of his trading, was $1,500 per share, a figure close to the $1,587.50 which would represent pro rata division at the total sale price later agreed upon. Defendants did not at any time inform plaintiff of Crawford's interest in buying the assets. Defendants decided, among themselves, that the Low stock, which they knew Crawford had been negotiating for, would have to be sold first. The reasons given by Wheeler, Sr., for not divulging Crawford's proposition to buy the assets were that he was afraid the Lows might "gum up the deal," that he thought they might insist on more than an equal share, and that there were business reasons such as tax disadvantage, uncertainty of contingent liabilities, and delay. (2) After some negotiation, Crawford bought the shares of plaintiff's mother and brother at $1,250 per share. As a condition of the sale, he had insisted upon their executing releases of any claims they might have had against the defendants, and he tried to get such a release from plaintiff as a condition of the purchase of plaintiff's stock, but plaintiff refused to give such a release. Finally, Crawford was told by defendants that they would be satisfied with the two releases, and Craw-

ford told plaintiff he would not insist on release of defendants by plaintiff. (3) On October 6, 1959, Crawford's check in payment of the shares of the three minority stockholders, including plaintiff, was handed to Mr. Cook, and the releases by plaintiff's mother and brother were signed. It is not entirely clear whether plaintiff completed the transaction on October 6 or October 7, but by the later date, if not the former, the transaction had been consummated. (4) On October 6, 1959, one of the attorneys representing defendants in this lawsuit, having learned that defendants were negotiating to sell all their stock at $1,700 a share and having told defendant Coleman Wheeler, Jr., that disclosure of this fact should be made to counsel for the minority stockholders, telephoned to Mr. Cook and gave him this information. Mr. Cook replied that he had heard of this from other sources. No disclosure was made, however, by any of the defendants or by their counsel of Mr. Crawford's overtures to purchase the corporate assets.

Defendants concluded their sale at $1,700 per share. Plaintiff received $1,250 per share. The jury awarded the difference between $1,250 and $1,587.50 (which is the amount which would have been paid for each share if the total amount paid by the purchaser had been divided equally), namely, $337.50 per share, a total of $28,012.50.

The corporation was dissolved by Crawford in November 1959. The amendment to conform to proof alleges, in substance, that an offer had been made to the directors which would have yielded $1,587.50 for each share, that the offer was withheld from plaintiff, that the said offer was rejected and that the purpose of rejecting it was to lower the value of plaintiff's stock and to raise the value per share of the majority stock, that as a result the plaintiff received $337.50 per share less than did the majority stockholders, and that all of these acts and omissions were in pursuance of the conspiracy theretofore alleged.

## Standing of Plaintiff

Defendants contend that plaintiff has no standing, arguing that if a wrong was committed, it was suffered by the corporation itself or equally by other minority stockholders (plaintiff's mother and brother), and can be attacked only by the corporation or by a stockholder's derivative suit. However, the wrong alleged by plaintiff and found by the jury was one to plaintiff as an individual, because the corporation was about to be dissolved at the time of the sale of all of the

corporate stock, and was dissolved promptly by the purchaser. The other minority stockholders signed releases to defendants as part of the transaction of the sale of their stock. Plaintiff was the sole stockholder who could sue. ▇ Where a stockholder is directly and individually injured, he may sue as an individual. (*Sutter* v. *General Petroleum Corp.*, 28 Cal.2d 525, 530 [170 P.2d 898, 167 A.L.R. 271]; *Dumm* v. *Pacific Valves*, 146 Cal.App.2d 792, 798 [304 P.2d 738]; *Kaiser* v. *Easton*, 151 Cal.App.2d 307, 310, 311 [311 P.2d 108].) Appellants cannot be heard to complain that the other two Lows were not parties, for if they had been successful parties, the judgment would have been larger. (*Perlman* v. *Feldmann* (2 Cir.) 219 F.2d 173 [50 A.L.R.2d 1134, 1143].)

### The Amendment to Conform to Proof

▇ Appellants contend that the amendment to conform to proof introduced a new theory of liability, the alleged wrongful withholding of notice to plaintiff of the proposal of Crawford to buy all of the assets, while the original complaint (it is called the "original complaint" in this opinion, although technically it is a first amended complaint) had alleged a conspiracy to diminish the value of plaintiff's stock. We need not be concerned with a line of demarcation between two theories, or whether there are two, in this case, because the two parts of defendants' acts and omission fit together. The original part would tend to show to the jury the attitude of domination by defendants, not only over the corporate affairs generally, but also with particular reference to the interest of the minority stockholders; and the second, to show the damages caused either by the first part, the acts, or by the second part, the omission. The evidence relating to the sale, including the proposal that had been made to buy the assets, was produced by defendants.

▇ Great liberality is allowed for amendments to conform to proof where no injury appears. (*Keeble* v. *Brown*, 123 Cal. App.2d 126, 129 [266 P.2d 569]; *Genger* v. *Albers*, 90 Cal. App.2d 52, 55 [202 P.2d 569].)

In their briefs appellants say they were surprised by the amendment and did not have the opportunity to present a defense on the new theory, but they do not give any specification of prejudice.

### Evidence to Support the Verdict

The nondisclosure of the proposal by Crawford to buy the assets is the most important element in the case. We believe

that the jury was justified in deciding that it was a breach of duty on the part of defendants to withhold the information.

Directors owe a limited fiduciary duty toward minority stockholders in the matter of sales of stock, where there are special facts which make it inequitable for them to withhold information. (*American Trust Co. v. California Western States Life Ins. Co.*, 15 Cal.2d 42 [98 P.2d 497]; *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958]; *Taylor v. Wright*, 69 Cal.App.2d 371 [159 P.2d 980]; *Haussler v. Wilson*, 164 Cal.App.2d 421 [330 P.2d 670]; 3 Fletcher, Corporations, § 1171.)

The ''special facts'' are to be found in the very small number of stockholders, the immediacy of sale of the entire corporate stock, the interest of defendants in the sale, the necessity for sale of the Lows' stock, the partial disclosure discussed below, and all of the acts of defendants which tended to depreciate the value of plaintiff's stock, and which were alleged in the original complaint.

Appellants argue that the doctrine of ''special facts'' or ''special circumstances'' has been applied only in cases in which a director, concealing information which he should have divulged to the stockholder, purchased the latter's stock for himself, or for his wife or someone in whom he had a particular interest. We believe, however, that the rule should be applied to the case before us, wherein immediate advantage, the sale of all of their stock by the directors at a price presumably profitable to them, was obtained.

One of defendants' attorneys realized that a disclosure was necessary, and told plaintiff's attorney of the possible sale at $1,700 a share, but the jury may have found that this was too late to help plaintiff, who had already agreed to sell at $1,250; but if it was not useless for that reason, it was faulty in this, that it did not include disclosure of Crawford's proposal to buy all of the corporate assets. Even where there is no duty to make a disclosure, when one does undertake to inform, he must speak the whole truth. (Civ. Code, § 1710, subd. 3; *Zinn v. Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 68, 69 [306 P.2d 1017].)

The sale of the majority stock at a higher price than that obtained for the minority interest might not in itself be subject to challenge and, indeed, defendants' brief cites authorities for the principle that, in general, majority stockholders need not tell minority stockholders of negotiations for sale of stock, such as *McCord v. Martin*, 47 Cal.App. 717

[191 P. 89], and *Tryon* v. *Smith,* 191 Ore. 172 [229 P.2d 251]. Sale of shares would not necessarily produce, as would sale of assets, a pro rata distribution. This prospect of an assets sale was withheld. Although an offer at a specific price had not been made, the prospective purchaser had preferred to buy the assets, and had attempted to prevail on the majority to sell the assets.

We are not impressed by defendants' argument that plaintiff was not injured by the concealment because he could not have forced a sale of assets against the will of the majority, if he had known of the purchaser's desire. The buyer was interested only in acquiring everything; plaintiff (and, perhaps, his mother and brother) might simply have declined to sell their shares except on equal terms with the majority. The jury may well have believed that Wheeler feared this very thing.

It is argued that there is no evidence that plaintiff was deceived by the concealment. It is true that there is no direct testimony by plaintiff that he did not know of the proposal to buy the assets, but defendant Wheeler testified that it was decided to keep that information from the Lows, and if at any time that decision had been changed, and plaintiff had been informed, defendants no doubt would have so testified. It is argued that plaintiff did not testify as to what he would have done if he had known of the assets proposal, but testimony as to what one would have done if he had knowledge of facts which he was entitled to have, would have been problematical, if not quite speculative. The case differs from one in which a positive misstatement is made; in such a case plaintiff readily can testify to what the misstatement led him to do. An inference may have been drawn by the jury that plaintiff would have insisted on equality of price per share, from the facts that plaintiff had been alert to his rights over the years, even aggressive, according to defendants' testimony; that Wheeler testified that he was afraid that if the assets proposal were made known to the Lows, they would demand even more than equality; and that even when the prospective purchaser, Crawford, endeavored to obtain a release of plaintiff's claim and lawsuit, he refused.

It would but prolong this opinion, which we are earnestly endeavoring to keep within such bounds as the voluminous record and lengthy briefs will permit, to discuss claimed deficiencies of plaintiff's case as it existed without the amend-

ment to conform to proof and the evidence in support thereof. Therefore, whether nonsuit should have been granted on the original complaint, or whether damages could have been proved thereunder, or whether concerted action to depress the value of plaintiff's stock by a succession of acts, each in itself nontortious, as appellants claim them to have been, would have been actionable by considering all these acts together, we think we need not discuss, despite prolonged disputations in the briefs.

### Instructions to the Jury

Appellants claim there was prejudicial error in the giving of five instructions, which we now consider separately. (1) An instruction was given on the "special facts" doctrine, in which the jury was instructed that directors or majority stockholders who have knowledge of "special facts" affecting the value of the stock cannot deal with a minority stockholder at arm's length, but must disclose such "special facts." It is objected that there were no such "special facts," and that the instruction is inapplicable because the defendants did not purchase plaintiff's stock or deal with him in regard to such purchase. We have stated our reasons for concluding that the "special facts" could have been found by the jury, and also our conclusion that defendants' interest in the sale was sufficient to have brought the doctrine into operation, even though there was no direct dealing between plaintiff and defendants. (2) An instruction was given on the duty to make a full disclosure, if disclosure is made at all, and appellants claim that the record is devoid of any evidence to support the instruction. The evidence is that of the telephone call from their attorney, making the partial disclosure discussed above. (3) There was an instruction that the use of the power of an officer, director or majority stockholder for the primary purpose of actually or apparently depressing the value of stock is a breach of fiduciary obligation. It is claimed that there is no evidence to support this and that it was not relevant to the theory upon which the court submitted the case to the jury, namely, the discrepancy existing between the price received by plaintiff and the price received by defendants. The evidence is detailed at the commencement of this opinion. The relevancy, even as to the cause stated in the amendment to conform to proof, lies in this, that the jury may have found that plaintiff's position in respect of sale of his stock was weakened by the acts of defendants over the years. (4) A lengthy instruction was given as to breach of

duty by directors, officers or majority stockholders in causing withholding of dividends for the purpose of acquiring minority stockholders' shares at less than fair value; in causing additional shares of voting stock for the primary purpose of depressing the minority stockholders' voting percentage; in refusing to repay loans to majority stockholders when the corporation is in a position to do so, where the primary purpose is to increase the control of the corporation by the majority stockholders; in threatening to do things which would make stock ownership unattractive to prospective purchasers, for the purpose of preventing a minority stockholder from offering his stock for sale. It is contended by appellants that this instruction related to a theory of the case which was abandoned by the amendment to conform to proof. Again, we are of the opinion that although the nondisclosure of the purchase of assets proposal was the crux of the case, the earlier acts, which were incorporated by reference into the amendment to conform to proof, were relevant for the purpose of showing plaintiff's position at the time he was negotiating with Crawford, and also for the purpose of showing intent on the part of defendants in withholding information. (5) An instruction relating to breach of a promise to retain representation on the board of directors by minority stockholders, in return for dismissal of a pending lawsuit, is claimed to have been irrelevant on the same grounds as the two considered immediately above, and meets the same answer.

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied September 28, 1962, and appellants' petition for a hearing by the Supreme Court was denied October 31, 1962.