[No. S051441. Jan. 27, 1997.]

RANDI W., a Minor, etc., Plaintiff and Appellant, v.
MUROC JOINT UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

**COUNSEL**

Scott Righthand for Plaintiff and Appellant.

Robert J. Rosati, Myers & Overstreet, Gregory L. Myers, Sabrina Simmons-Brill, C. Michael Carrigan and Lori R. Mayfield for Defendants and Respondents.

Sonnenschein, Nath & Rosenthal, Lee T. Paterson, Paul, Hastings, Janofsky & Walker, Paul Grossman, Paul W. Cane, Jr., and George W. Abele as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

CHIN, J.—In this case, we must decide under what circumstances courts may impose tort liability on employers who fail to use reasonable care in recommending former employees for employment without disclosing material information bearing on their fitness. Specifically, we are concerned with letters of recommendation that defendant school district officers allegedly wrote to a college placement service on behalf of Robert Gadams, an administrative employee they formerly employed. Plaintiff and appellant Randi W. claims that defendants unreservedly recommended Gadams for employment without disclosing to the placement service (and thus to prospective employers) facts defendants knew regarding prior charges or complaints of sexual misconduct and impropriety leveled against Gadams. Defendants' letters allegedly induced another school district to hire Gadams, who later sexually assaulted plaintiff, a student in that district.

As will appear, consistent with the Court of Appeal judgment in this case, we conclude that defendants' letters of recommendation, containing unreserved and unconditional praise for former employee Gadams despite defendants' alleged knowledge of complaints or charges of his sexual misconduct with students, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation. Although policy considerations dictate that ordinarily a recommending employer should not be held accountable to third persons for failing to disclose negative information regarding a former employee, nonetheless liability may be imposed if, as alleged here, the recommendation letter amounts to an *affirmative misrepresentation* presenting a foreseeable and substantial risk of physical harm to a third person.

We also conclude, contrary to the Court of Appeal judgment in this case, that defendants' alleged failure to report the charges of Gadams's improper activities to the appropriate authorities pursuant to state statutory law fails to afford an alternate basis for tort liability in this case, and that the trial court properly sustained defendants' demurrers to the count in the complaint relying on this theory of liability.

We take the following uncontradicted statement of the procedural history of the case in large part from the Court of Appeal majority opinion.

## I. Procedural History

Plaintiff and appellant Randi W. (through her guardian ad litem, Marilyn E. W.) filed this lawsuit against Livingston Union School District, Muroc Joint Unified School District, Golden Plains Unified School District, Tranquility Elementary School, Mendota Unified School District, the State of California, Robert Gadams, Gilbert Rossette, Gary Rice, Richard Cole, Henry Escobar, Kathy Berkeley, and David Malcolm.

Defendants Livingston Union School District (Livingston), Robert Gadams, Henry Escobar, and Kathy Berkeley are not parties to this appeal. Accordingly, we use the term "defendants" to refer to all remaining defendants in the case.

### A. *The Complaint*

Plaintiff's first amended complaint (the complaint) alleged that she was a student at Livingston Middle School, where Gadams served as vice principal. On February 1, 1992, while plaintiff was in Gadams's office, he "negligently and offensively touched, molested, and engaged in sexual touching of 13-year old [plaintiff] proximately causing injury to her."

### 1. *Count One: Negligence*

The negligence count of the complaint alleges that all defendants knew or had reason to know that Gadams had previously engaged in various types of "sexual wrongdoing" with minors and students, but that defendants "negligently, carelessly, and/or with knowledge intentionally, maliciously, and/or fraudulently hired, retained, failed to report, failed to discipline, failed to supervise and/or affirmatively recommended defendant ROBERT GADAMS to other positions of trust and positions whereby he would act as an authority figure to minors and students."

The complaint makes specific negligence allegations as to each defendant. It alleges that Gadams worked in the Mendota Unified School District (Mendota) from 1985 to 1988. In May 1990, Gilbert Rossette, a Mendota official, provided to the placement office at Fresno Pacific College (where Gadams received his teaching credentials) a "detailed recommendation" regarding Gadams, knowing that it would be passed on to prospective employers, although Rossette allegedly knew of Gadams's prior improper contacts with female students. These contacts included hugging some female junior high school students, giving them back massages, making "sexual remarks" to them, and being involved in "sexual situations" with them.

Rossette's recommendation noted numerous *positive* aspects of Gadams's tenure in Mendota, including his "genuine concern" for students and his "outstanding rapport" with everyone, and concluded, "I wouldn't hesitate to recommend Mr. Gadams for any position!"

The complaint makes similar allegations regarding Richard Cole, an official of Tranquility High School District and Golden Plains Unified School District (Golden Plains), where Gadams was employed between 1986 or 1987 and 1990. The complaint alleges that in 1990, Cole provided Fresno Pacific College's placement office with a "detailed recommendation" of Gadams, although he knew of Gadams's prior inappropriate conduct while an employee of Golden Plains. Specifically, Cole knew that Gadams had been the subject of various parents' complaints, including charges that he "led a panty raid, made sexual overtures to students, sexual remarks to students . . . ." These complaints had allegedly led to Gadams's "resigning under pressure from Golden Plains due to sexual misconduct charges . . . ." Cole's recommendation listed Gadams's various *favorable* qualities as an instructor and administrator, and stated Cole "would recommend him for almost any administrative position he wishes to pursue."

Gary Rice and David J. Malcolm, officials in the Muroc Joint Unified School District (Muroc), where Gadams was employed in or around 1990 or 1991, also allegedly provided a "detailed recommendation" to Fresno Pacific College's placement office in 1991, despite their knowledge of disciplinary actions taken against Gadams regarding sexual harassment allegations made during his employment with Muroc. The allegations included charges of "sexual touching" of female students and induced Muroc to force Gadams to resign. The recommendation, signed by Malcolm, described Gadams as "an upbeat, enthusiastic administrator who relates well to the students" and who was "in a large part" responsible for making the campus of Boron Junior/ Senior High School "a safe, orderly and clean environment for students and staff." Malcolm concluded by recommending Gadams "for an assistant principalship or equivalent position without reservation."

Defendants made these recommendations on forms that Fresno Pacific College supplied, which clearly stated that the information provided "will be sent to prospective employers."

Plaintiff contends that these recommendations, with their associated failures to disclose and to warn, were made "with actual malice, corruption and actual fraud since these defendants knew the true facts regarding Gadams and knew that an injury to a child by Gadams would probably result." Plaintiff alleges that her injuries were a proximate result of defendants' actions.

### 2. *Count Two: Negligent Hiring*

Plaintiff alleges that each defendant was negligent in hiring Gadams "without any significant investigation or knowledge that Gadams was fit to act in a position of trust with respect to children or with complete indifference" to Gadams's history of sexual misconduct. She alleges that her injuries were a direct and proximate result of defendants' failures to investigate Gadams.

### 3. *Count Three: Negligent Misrepresentation*

Plaintiff alleges that defendants "negligently and carelessly failed to warn and failed to disclose the true facts" as previously alleged; that their gratuitous recommendations of Gadams to Fresno Pacific College's placement office were made with "actual fraud, corruption, and actual malice"; and that they knew those representations were false, and knew that "minor public school children generally and those at Livingston would probably suffer injury because of the representations and failure to warn." Plaintiff alleges that defendants owed a duty "to those to whom the statements were made and to the children at public schools whose families rely upon said representations."

### 4. *Count Four: Fraud*

Plaintiff alleges that defendants intentionally made those knowingly false representations about Gadams with knowledge that they were "likely to injure plaintiff," and with the intent that they would be relied upon "by all other defendants and others, and in fact were relied upon by each other defendant and plaintiff."

### 5. *Count Five: Negligence Per Se*

Plaintiff alleges that defendants had a mandatory duty under Penal Code section 11164 et seq. and other statutes to report the charges of Gadams's prior sexual misconduct "to appropriate authorities and to prospective employers." Defendants' failure to do so afforded Gadams "the opportunity to maintain a position of trust and authority with regard to minor students thereby enabling his molest of plaintiff."

### 6. *Count Six: Title IX Violation*

Finally, plaintiff alleges that she "has been the subject of sexual harassment by defendants," a violation of federal law. (See 20 U.S.C. §§ 1681-1688.)

## B. *The Demurrers*

Defendants demurred, arguing that each cause of action failed as a matter of law because the facts alleged failed to establish defendants owed any duty to plaintiff. At the hearing, the trial court expressed doubt whether plaintiff could adequately plead any duty running from defendants to her. The court further noted that, but for sustaining the demurrer on that basis, it would have sustained the demurrer with leave to amend for failure adequately to plead causation and reliance.

The court's later written order sustained defendants' demurrers without leave to amend because ". . . the First Amended Complaint does not state facts sufficient to constitute a cause of action against the demurring defendants, on the basis that no duty exists to this plaintiff, from these demurring defendants." The court entered judgment of dismissal with prejudice in favor of defendants, and this appeal followed.

## C. *The Court of Appeal Opinion*

The Court of Appeal majority affirmed the trial court's ruling as to the general negligence, negligent hiring, and title IX counts, but reversed as to the negligent misrepresentation, fraud, and negligence per se counts. On the affirmed counts, the court reasoned that (1) the absence of allegations indicating defendants had the ability to control Gadams, or had a "special relationship" with him, negated general negligence liability (count one); (2) the fact that defendants did not employ Gadams when he allegedly injured plaintiff precluded liability under a negligent hiring theory (count two); and (3) the lack of a direct relationship between plaintiff and defendants precluded liability for sexual harassment under title IX (count six). Plaintiff did not seek our review of those rulings, and we do not address them here.

As for the reversed counts, the Court of Appeal first ruled that plaintiff's complaint adequately stated a cause of action for fraud and negligent misrepresentation. The majority relied primarily on sections 310 and 311 of the Restatement Second of Torts, imposing liability on one who intentionally or negligently gives false information to another person that results in physical injury to the recipient or a third person. The majority believed that defendants' letters contained misleading representations or "half-truths" regarding Gadams's qualifications. The Court of Appeal dissent concluded that because the letters contained no statements regarding Gadams's sexual contacts with students, but referred only to "positive" aspects of his character and qualifications, the letters contained no actionable misrepresentations.

The Court of Appeal majority also ruled that the complaint stated a cause of action for negligence per se, because defendants allegedly breached their

statutory duty under the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.) (the Reporting Act) to report to the authorities the various charges of sexual misconduct involving Gadams. The majority concluded the complaint adequately alleged that defendants' knowledge or suspicion that Gadams had committed sexual abuse invoked the provisions of the Reporting Act.

The Court of Appeal dissent disagreed, concluding that defendants had no duty under the Reporting Act to report gossip or hearsay regarding a school officer's improper conduct.

## II. Discussion

### A. *Fraud and Negligent Misrepresentation*

■ Our task on reviewing an order sustaining a demurrer without leave to amend "is to determine whether the complaint states a cause of action. Accordingly, we assume that the complaint's properly pleaded material allegations are true and give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context." (*Garcia* v. *Superior Court* (1990) 50 Cal.3d 728, 732 [268 Cal.Rptr. 779, 789 P.2d 960] (*Garcia*).)

■ In finding plaintiff's complaint stated a cause of action against defendants for fraud and negligent misrepresentation, the Court of Appeal majority relied primarily on sections 310 and 311 of the Restatement Second of Torts. Section 310 involves intentional conduct and provides that "[a]n actor who makes a *misrepresentation* is subject to liability to another for *physical harm* which results from an act done by the other *or a third person* in reliance upon the truth of the representation, if the actor [¶] (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and [¶] (b) knows [¶] (i) that the statement is false, or [¶] (ii) that he has not the knowledge which he professes." (Italics added.)

Section 311 of the Restatement Second of Torts, involving negligent conduct, provides that: "(1) One who negligently gives *false information* to another is subject to liability for physical harm caused by action taken by the other *in reasonable reliance upon such information*, where such harm results [¶] (a) to the other, or [¶] (b) *to such third persons as the actor should expect to be put in peril by the action taken.* [¶] (2) Such negligence may consist of failure to exercise reasonable care [¶] (a) in ascertaining the accuracy of the information, or [¶] (b) in the manner in which it is communicated." (Italics added.)

Although ordinarily a duty of care analysis is unnecessary in determining liability for intentional misrepresentation or fraud (see 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778, and cases cited), here we consider liability to *a third person* injured as a result of the alleged fraud, an extension of ordinary tort liability based on fraud. (See Civ. Code, § 1709.) Accordingly, in deciding whether to adopt the two Restatement provisions in the circumstances of this case, we consider whether plaintiff has sufficiently pleaded that defendants owed her a *duty of care*, that they breached that duty by making *misrepresentations* or giving *false information*, and that Livingston's *reasonable reliance* on their statements *proximately caused* plaintiff's injury. (See *Garcia, supra,* 50 Cal.3d at pp. 734-738 [discussing these elements in context of Rest.2d Torts, § 311].) We examine each element separately.

### 1. *Duty to Plaintiff*

Did defendants owe plaintiff a duty of care? In defendants' view, absent some special relationship between the parties, or some specific and known threat of harm to plaintiff, defendants had no duty of care toward her, and no obligation to disclose in their letters any facts regarding the charges against Gadams. (See Rest.2d Torts, § 315 [generally no duty to warn those threatened by third person's conduct]; *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193] [same]; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 758 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701] [duty to warn "readily identifiable" victim]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 433-435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166] ["special relationship" creates duty to warn or control another's conduct]; cf. *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 692-693 [254 Cal.Rptr. 211, 765 P.2d 373] [declining to extend "special relationship" test to employer-employee relationship].)

Plaintiff does not argue that a special relationship existed between defendants and her or Gadams. Instead, she relies on *Garcia, supra,* 50 Cal.3d at pages 735-736, where we held that, under section 311 of the Restatement Second of Torts, a parole officer had a duty to exercise reasonable care in giving the victim information regarding the parolee who ultimately killed her. We noted that although the parole officer had no duty to volunteer information regarding the released criminals he supervised, ". . . the absence of a duty to speak does not entitle one to speak falsely." *(Garcia, supra,* 50 Cal.3d at p. 736.) We concluded that the parole officer, "having chosen to communicate information about [the parolee] to [the victim], had a duty to use reasonable care in doing so," and that the officer either knew or

should have known that the victim's safety might depend on the accuracy of the information imparted. (*Ibid.*, citing Rest.2d Torts, § 311, com. b, p. 106.)

Plaintiff acknowledges that *Garcia* is distinguishable, and that no California case has yet held that one who intentionally or negligently provides false information to another owes a duty of care *to a third person* who did not receive the information and who has no special relationship with the provider. Accordingly, the issue before us is one of first impression, and we apply the general analytical principles used to determine the existence of duty in particular cases.

In this state, the general rule is that all persons have a duty to use ordinary care to prevent others from being injured as the result of their conduct. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; see Civ. Code, § 1714.) As we have observed, "*Rowland* enumerates a number of considerations . . . that have been taken into account by courts in various contexts to determine whether a departure from the general rule is appropriate: 'the major [considerations] are *the foreseeability of harm to the plaintiff*, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (Italics added.) (69 Cal.2d at p. 113.) The foreseeability of a particular kind of harm plays a very significant role in this calculus [citation], but a court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].)

### a. *Foreseeability and causality*

Applying these factors here, we first examine whether plaintiff's injuries were a *foreseeable* result of defendants' representations regarding Gadams's qualifications and character, coupled with their failure to disclose to the Fresno Pacific College placement office information regarding charges or complaints of Gadams's sexual misconduct. Could defendants reasonably have foreseen that the representations and omissions in their reference letters would result in physical injury to someone? Although the chain of causation

leading from defendants' statements and omissions to Gadams's alleged assault on plaintiff is somewhat attenuated, we think the assault was reasonably foreseeable. Based on the facts alleged in the complaint, defendants could foresee that Livingston's officers would read and rely on defendants' letters in deciding to hire Gadams. Likewise, defendants could foresee that, had they not unqualifiedly recommended Gadams, Livingston would not have hired him. And, finally, defendants could foresee that Gadams, after being hired by Livingston, might molest or injure a Livingston student such as plaintiff. We must assume, for purposes of demurrer, that plaintiff was indeed *injured* in the manner she alleges, and that a *causal connection exists between defendants' conduct and the injury suffered.* As plaintiff's complaint alleges, her injury was a "direct and proximate result" of defendants' fraud and misrepresentations.

### b. *Moral blame*

Whether defendants were guilty of any *moral blame* would depend on the proof adduced at trial, although it is certainly arguable that their unreserved recommendations of Gadams, together with their failure to disclose facts reasonably necessary to avoid or minimize the risk of further child molestations or abuse, could be characterized as morally blameworthy.

### c. *Availability of insurance or alternative courses of conduct*

Next, we may assume that standard business liability *insurance* is available to cover instances of *negligent* misrepresentation or nondisclosure as alleged in count three of the complaint, but is not available for the *fraud* or *intentional* misconduct alleged in count four. (See Ins. Code, § 533; *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16-18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) Perhaps more significantly, defendants had *alternative courses of conduct* to avoid tort liability, namely, (1) writing a "full disclosure" letter revealing all relevant facts regarding Gadams's background, or (2) writing a "no comment" letter omitting any affirmative representations regarding Gadams's qualifications, or merely verifying basic employment dates and details. The parties cite no case or Restatement provision suggesting that a former employer has an affirmative duty of disclosure that would preclude such a "no comment" letter. ██ As we have previously indicated, liability may not be imposed for mere nondisclosure or other failure to act, at least in the absence of some special relationship not alleged here. (*Garcia, supra,* 50 Cal.3d at p. 734; see Rest.2d Torts, § 315.)

### d. *Public policy considerations*

██ As for public policy, the law certainly recognizes a *policy of preventing future harm* of the kind alleged here. One of society's highest

priorities is to protect children from sexual or physical abuse. (See, e.g., *Barela* v. *Superior Court* (1981) 30 Cal.3d 244, 254 [178 Cal.Rptr. 618, 636 P.2d 582] [duty of all citizens to protect children from sexual abuse]; Pen. Code, § 11166 [duty to report suspected child abuse].)

Defendants urge that *competing social or economic policies* may disfavor the imposition of liability for misrepresentation or nondisclosure in employment references. They observe that a rule imposing liability in these situations could greatly inhibit the preparation and distribution of reference letters, to the general detriment of employers and employees alike.

We have recently stated that "[w]hen deciding whether to expand a tort duty of care, courts must consider the potential social and economic consequences. [Citations.]" (*Macias* v. *State of California* (1995) 10 Cal.4th 844, 859-860 [42 Cal.Rptr.2d 592, 897 P.2d 530]; see *Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 146 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] ["duty" is expression of the total policy considerations leading to conclusion that plaintiff is entitled to protection].) Defendants argue that a rule imposing tort liability on writers of recommendation letters could have one very predictable consequence: employers would seldom write such letters, even in praise of exceptionally qualified employees.

In defendants' view, rather than prepare a recommendation letter stating all "material" facts, positive and negative, an employer would be better advised to decline to write a reference letter or, at most, merely to confirm the former employee's position, salary, and dates of employment. According to defendants, apart from the former employer's difficulty in deciding how much "negative" information to divulge, an employer who disclosed more than minimal employment data would risk a defamation, breach of privacy, or wrongful interference suit from a rejected job seeker. (See, e.g., *Jensen* v. *Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 965 [18 Cal.Rptr.2d 83] [libel action may be based on false accusations in employee evaluation form of criminal conduct, dishonesty, incompetence, or reprehensible personal characteristics or behavior]; *Marshall* v. *Brown* (1983) 141 Cal.App.3d 408, 412 [190 Cal.Rptr. 392] [wrongful interference liability based on negative comments in former employer's evaluation letter]; see also *Nelson* v. *Upsala College* (3d Cir. 1995) 51 F.3d 383, 387-388, and cases cited; Smolla, Law of Defamation (1995 ed.) § 15.01[2][a], p. 15-3, and cases cited ["Traditionally, defamation suits brought against former employers by disgruntled employees arise in the context of unfavorable reference letters or other communications to third parties concerning the employee's job performance

. . . ."]; Lab. Code, §§ 1050 [misdemeanor to misrepresent facts regarding former employee to prevent employee's further employment], 1054 [treble damages for misrepresenting employment facts].)

Defendants contend that the threat of potential tort liability will inhibit employers from freely providing reference information, restricting the flow of information prospective employers need and impeding job applicants in finding new employment. One writer recently explained that "[m]any employers have adopted policies, sometimes referred to as 'no comment' policies, under which they refuse to provide job references for former or departing employees . . . . [T]hese policies work to the detriment of both prospective employers and prospective employees." (Saxton, *Flaws in the Laws Governing Employment References: Problems of "Overdeterence" and a Proposal for Reform* (1995) 13 Yale L. & Pol'y Rev. 45; see also *id.* at pp. 46-52 [citing evidence of increasing use of "no comment" letters, and deploring resultant restriction on flow of information]; Note, *Negligent Referral: A Potential Theory for Employer Liability* (1991) 64 So.Cal.L.Rev. 1645 [observing that "[m]ore and more employers . . . are refusing to provide employee references"]; Note, *Employer Defamation: Reasons and Remedies for Declining References and Chilled Communications in the Workplace* (1989) 40 Hastings L.J. 687, 688-690; Note, *Defamation in the Workplace: The Impact of Increasing Employer Liability* (1989) 72 Marq. L.Rev. 264, 265 & fn. 9, 275-276, 300-301.)

In response, plaintiff asserts it is unlikely that employers will decline to write reference letters for fear of tort liability, at least in situations involving no foreseeable risks of physical injury to someone. Plaintiff observes that an employer would be protected from a defamation suit by the statutory qualified privilege for nonmalicious communications regarding a job applicant's qualifications. (See Civ. Code, § 47, subd. (c).) This provision was amended in 1994 to provide that the qualified privilege available for communications to and by "interested" persons "applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, the prospective employer." (Civ. Code, § 47, subd. (c).) As plaintiff suggests, the existence of this privilege may encourage more open disclosure of relevant information regarding former employees. (See also *Jensen v. Hewlett-Packard Co., supra,* 14 Cal.App.4th at pp. 964-965 [acknowledging public policy disfavoring libel suits based on comments in employee evaluation forms].)

We note that, although defendants have not argued the point, an amicus curiae has contended that the privilege under Civil Code section 47, subdivision (c), extends beyond defamation actions by former employees and

would provide a defense to plaintiff's misrepresentation action. As we have previously acknowledged, a similar qualified privilege for communications made in judicial proceedings (Civ. Code, § 47, subd. (b)(2)) applies to "virtually all torts except malicious prosecution. [Citations.]" (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 209 [271 Cal.Rptr. 191, 793 P.2d 524].) Legislative materials submitted by this amicus curiae, however, indicate that Civil Code section 47, subdivision (c), was primarily intended to provide employers with a defense to actions *by former employees*, rather than to insulate them from all tort liability arising from employment disclosures.

Assuming arguendo that Civil Code section 47, subdivision (c), would afford a defense in negligent or intentional misrepresentation actions brought by injured third persons, by its terms the new privilege pertains only to communications made "upon request of" the prospective employer. Defendants do not claim that they wrote in response to *Livingston*'s request, and, accordingly, the privilege is inapplicable.

■ In light of these factors and policy considerations, we hold, consistent with Restatement Second of Torts sections 310 and 311, that the writer of a letter of recommendation owes to third persons a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the third persons. In the absence, however, of resulting physical injury, or some special relationship between the parties, the writer of a letter of recommendation should have no duty of care extending to third persons for misrepresentations made concerning former employees. In those cases, the policy favoring free and open communication with prospective employers should prevail.

■ Having concluded that defendants owed plaintiff a duty not to misrepresent Gadams's qualifications or character in their letters of recommendation, we next must determine whether defendants' letters indeed contained "misrepresentations" or "false information" within the meaning of Restatement Second of Torts section 310 or 311. If defendants made no misrepresentations, then as a matter of law they could not be found liable under those provisions.

### 2. *Misleading Misrepresentation or Mere Nondisclosure?*

The Court of Appeal majority determined that plaintiff adequately alleged defendants committed actual misrepresentation rather than mere nondisclosure, because their letters of recommendation amounted to "misleading half-truths," containing incomplete information regarding Gadams's character and reliability. According to the Court of Appeal, defendants' unqualified

recommendation of Gadams, coupled with their failure to disclose that Gadams had been in "sexual situations" with female students and had made "sexual overtures" to them, or that defendants knew complaints regarding Gadams's conduct had resulted in his resignation, amounted to affirmative misrepresentations.

Defendants join the Court of Appeal dissent in asserting that their letters of recommendation contained no misrepresentations that would invoke either Restatement Second of Torts section 310 or 311. As defendants observe, their letters neither discussed nor denied prior complaints of sexual misconduct or impropriety against Gadams.

Like the Court of Appeal majority, we view this case as a "misleading half-truths" situation in which defendants, having undertaken to provide some information regarding Gadams's teaching credentials and character, were obliged to disclose all other facts which "materially qualify" the limited facts disclosed. (See, e.g., *Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 294 [85 Cal.Rptr. 444, 466 P.2d 996]; *Rogers* v. *Warden* (1942) 20 Cal.2d 286, 289 [125 P.2d 7]; *Low* v. *Wheeler* (1962) 207 Cal.App.2d 477, 484 [24 Cal.Rptr. 538]; Civ. Code, § 1710, subd. 3 [deceit is the suppression of a material fact by one who gives misleading information of other facts]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 703, at p. 805, and cases cited.)

As the Court of Appeal observed, defendants' letters offered general and unreserved praise for Gadams's character and personality (e.g., "dependable [and] reliable," "pleasant personality," "high standards," "relates well to the students"). According to the Court of Appeal, having volunteered this information, defendants were obliged to complete the picture by disclosing material facts regarding charges and complaints of Gadams's sexual improprieties.

Defendants suggest that a letter noting only a candidate's favorable qualities cannot reasonably be deemed misleading as to any unfavorable ones, and the recipient of such a letter cannot reasonably rely on any implication that the candidate lacks unfavorable qualities. (See *Garcia, supra,* 50 Cal.3d at p. 737 [stressing necessity of proving recipient of false information reasonably relied on it as a prerequisite to liability under Rest.2d Torts, § 311].) As one commentator observes, ". . . half of the truth may obviously amount to a lie, *if it is understood to be the whole*." (Prosser & Keeton, The Law of Torts (5th ed. 1984) Misrepresentation and Nondisclosure, § 106, p. 738, italics added.) According to defendants, no reasonable person would assume a letter of recommendation purports to state the whole truth about a candidate's background and character.

In defendants' view, we should characterize letters of recommendation stating only the favorable aspects of an applicant's background or character as a *permissible* variety of "half-truth," which misleads no one, and which, for that reason alone, should not form the basis for liability on a theory of negligent misrepresentation or fraud. (See *Evan F.* v. *Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 840-841, fn. 2 [10 Cal.Rptr.2d 748] [failure of church officers to disclose pastor's history of pedophilia not actionable in absence of affirmative representation denying that history, because "[t]he tort of negligent misrepresentation requires a 'positive assertion' and does not apply to implied misrepresentations"]; *Weissich* v. *County of Marin* (1990) 224 Cal.App.3d 1069, 1082-1083 [274 Cal.Rptr. 342] [county officers' failure to notify former district attorney of threats posed by vindictive probationer not actionable despite implied representation to warn]; *Yanase* v. *Automobile Club of So. Cal.* (1989) 212 Cal.App.3d 468, 473 [260 Cal.Rptr. 513, 2 A.L.R.5th 1084] [auto club tourbook endorsing motel's accommodations contained no "positive assertion concerning neighborhood safety," precluding negligent misrepresentation suit]; *Cohen* v. *Wales* (1987) 133 A.D.2d 94 [518 N.Y.S.2d 633, 634] [failure to disclose sexual misconduct charges against former employee/teacher not actionable because "[t]he mere recommendation of a person for potential employment is not a proper basis for asserting a claim of negligence where another party is responsible for the actual hiring"]; *Moore* v. *St. Joseph Nursing Home, Inc.* (1990) 184 Mich.App. 766 [459 N.W.2d 100, 103]; cf. *Gutzan* v. *Altair Airlines, Inc.* (3d Cir. 1985) 766 F.2d 135, 137 [liability of employment agency based on positive misrepresentation that job seeker's innocent explanation for his rape conviction "had been verified by military officials"].)

But plaintiff argues convincingly that, under the facts pleaded in this case, defendants indeed made "positive assertion[s]" regarding Gadams's character, assertions deceptively incomplete because defendants knowingly concealed material facts regarding Gadams's sexual misconduct with students. Thus, defendant Mendota, through its officer Rossette, allegedly extolled Gadams's "genuine concern" for and "outstanding rapport" with students, knowing that Gadams had engaged in inappropriate physical contact with them. Rossette declared in the letter that he "wouldn't hesitate to recommend Mr. Gadams for any position!"

Defendant Golden Plains, through its officer Cole, stated it would recommend Gadams for "any administrative position," despite its knowledge of Gadams's prior inappropriate conduct while an employee of Golden Plains, conduct that had allegedly led to Gadams's "resigning under pressure from Golden Plains due to sexual misconduct charges. . . ."

Finally, defendant Muroc, through its officers Rice and Malcolm, allegedly recommended Gadams "for an assistant principalship or equivalent

position without reservation," describing Gadams as "an upbeat, enthusiastic administrator who relates well to the students," despite its knowledge of disciplinary actions taken against him regarding sexual harassment allegations made during his employment with Muroc, allegations that induced Muroc to force Gadams to resign.

We conclude that these letters, essentially recommending Gadams for any position without reservation or qualification, constituted affirmative representations that strongly implied Gadams was fit to interact appropriately and safely with female students. These representations were false and misleading in light of defendants' alleged knowledge of charges of Gadams's repeated sexual improprieties. We also conclude that plaintiff's complaint adequately alleged misleading half-truths that could invoke an exception to the general rule excluding liability for mere nondisclosure or other failure to act. (E.g., *Garcia*, *supra*, 50 Cal.3d at p. 734.)

### 3.   *Reliance*

Did plaintiff adequately plead the requisite element of reliance? Her complaint alleges that Livingston relied on defendants' letters in hiring Gadams, but the complaint is silent regarding plaintiff's own reliance on those letters. The Court of Appeal majority ruled that, even though defendants made no misrepresentations directly to plaintiff, who probably neither knew of, nor relied on, their statements, she was nonetheless entitled to protection in accordance with the Restatement principles previously discussed.

With respect to section 310 of the Restatement Second of Torts, the Court of Appeal concluded that, despite some imprecision of language, ". . . it is clear that the authors of the Restatement intended [section 310] to apply to cases in which third persons are endangered by the misrepresentation." This conclusion seems correct. Paraphrasing the section, here defendants allegedly made misrepresentations that resulted in physical harm to plaintiff by reason of an act done by Livingston (i.e., hiring Gadams) *in reliance* on the truth of the representations. Defendants intended or should have realized that their misrepresentations were likely to induce action by Livingston that involved an unreasonable risk of physical harm to plaintiff. (See Rest.2d Torts, § 310, com. c, pp. 104-105 ["A misrepresentation may be negligent not only toward a person whose conduct it is intended to influence but also toward all others whom the maker should recognize as likely to be imperiled by action taken in reliance upon his misrepresentation."].)

As for section 311 of the Restatement Second of Torts, the Court of Appeal observed that our court has already adopted and applied that section,

although in the different context of a misrepresentation made *directly* to the plaintiff, who *relied* on it and was physically harmed as a result. (*See Garcia, supra,* 50 Cal.3d at pp. 735-736.)

Defendants in this case had contended on appeal that plaintiff failed to plead *her own* reliance on their letters, as required by the case law. (E.g., *Mirkin* v. *Wasserman* (1993) 5 Cal.4th 1082, 1088 [23 Cal.Rptr.2d 101, 858 P.2d 568] ["It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation."]; *id.* at p. 1089, fn. 2 and accompanying text; see *Garcia, supra,* 50 Cal.3d at p. 737.) The Court of Appeal rejected the argument, observing that "[t]hose cases all involved claims only for damages resulting from economic loss as opposed to damages based on physical injury. . . . [C]ases involving only economic loss are subject to a more restrictive rule. (*Garcia* v. *Superior Court, supra,* 50 Cal.3d at pp. 735-736 . . . .)"

The Court of Appeal thus concluded that it was unnecessary under section 311 of the Restatement Second of Torts for plaintiff to plead her own reliance on defendants' misrepresentations, as long as the recipient of those misrepresentations (ultimately, Livingston) reasonably relied on them in hiring Gadams, as plaintiff alleged here. Citing a comment to section 311, the court observed that "The Restatement, however, makes it clear that the plaintiff need not rely on the misrepresentation and may, indeed, not even know that it was made. (See Rest.2d Torts, § 311, com. d, illus. 8, pp. 108-109.)" (See also *Mirkin* v. *Wasserman, supra,* 5 Cal.4th at pp. 1111-1114 (conc. and dis. opn. of Kennard, J. [citing the principle of indirect reliance]).)

We agree with the Court of Appeal's reliance analysis. Under the Restatement provisions, plaintiff need only allege that her injury resulted from action that *the recipient* of defendants' misrepresentations took in reliance on them. In a case involving false or fraudulent letters of recommendation sent to prospective employers regarding a potentially dangerous employee, it would be unusual for *the person ultimately injured* by the employee actually to "rely" on such letters, much less even be aware of them.

In any event, as the Court of Appeal observed, failure to plead reliance would not be a ground for sustaining a demurrer without leave to amend. We note that questions concerning the reasonableness of Livingston's reliance on letters written well before Livingston allegedly received information regarding Gadams's misconduct are not before us in reviewing the trial court's ruling on demurrer.

### 4. *Proximate Cause*

As previously discussed, plaintiff's complaint alleges that her injury was a "proximate" result of defendants' fraud and misrepresentations. Defendants do not suggest that the complaint fails to state sufficient facts to establish proximate causation, assuming the remaining elements of duty, misrepresentation and reliance are sufficiently pleaded. Based on the facts alleged in the complaint, plaintiff's injury foreseeably and proximately resulted from Livingston's decision to hire Gadams in reliance on defendants' unqualified recommendation of him.

Thus, we conclude, consistent with the Court of Appeal majority, that the trial court improperly sustained demurrers to counts three and four of plaintiff's complaint without leave to amend.

### B. *The Negligence Per Se Count*

■ As an alternative theory of liability, plaintiff charged defendants with negligence per se arising from breach of their statutory duty, as the Reporting Act requires, to report to the authorities the various incidents of sexual misconduct involving Gadams. Such a breach, if proved, would raise a presumption that defendants failed to exercise due care. (See Evid. Code, § 669, subd. (a); *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 413-414 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324] [negligence per se liability arising from failure to comply with Reporting Act provision requiring reporting of child *physical* abuse].)

The Court of Appeal majority concluded that plaintiff's complaint stated a cause of action for negligence per se, based on defendants' alleged breach of their statutory duty. The Court of Appeal reasoned that the Reporting Act required defendants to report known or reasonably suspected incidents of "child abuse" to a "child protective agency" (which would include law enforcement agencies). (Pen. Code, § 11166, subd. (a).) The court believed plaintiff's complaint adequately pleaded that defendants knew acts of child abuse had occurred within the meaning of the Reporting Act.

The dissenting justice in the Court of Appeal concluded that plaintiff's complaint failed to state a cause of action for negligence per se because she alleged insufficient facts to show defendants violated Penal Code section 11166, the reporting provision. According to the dissent, plaintiff failed to allege that defendants knew or had observed any abused child, or that they knew of any actual physical or sexual assaults or exploitation, as defined in Penal Code section 11165.1.

We need not decide whether the complaint's allegations are sufficient to allege defendants knew or suspected reportable "child abuse," because it is clear plaintiff was not a member of the class for whose protection the Reporting Act was enacted. Defendant school districts were never the "custodians" of plaintiff, a Livingston student and, accordingly, owed her no obligations under the act.

Evidence Code section 669 creates a presumption of negligence arising from violation of a statute, but only if "[t]he person suffering the . . . injury . . . was one of the class of persons for whose protection the statute . . . was adopted." (Evid. Code, § 669, subd. (a)(4); see 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 819, p. 172.) The duty to report under the Reporting Act (see Pen. Code, § 11166) applies to a "child care custodian" (which would include a school district) "who has knowledge of or observes a child, in his or her professional capacity or within the scope of his or her employment, whom he or she knows or reasonably suspects has been the victim of child abuse" (which includes sexual abuse). Reasonably construed, the act was intended to protect only those children in the custodial care of the person charged with reporting the abuse, and not all children who may at some future time be abused by the same offender. Plaintiff fails to allege that she was ever in defendants' custodial care, or even that defendants were aware that Gadams had molested *her*.

To adopt plaintiff's contrary argument would impose a broader reporting obligation than the Legislature intended. Under plaintiff's interpretation of the Reporting Act, a child care custodian that fails to report suspected child abuse affecting one child in its care or custody could be held liable, perhaps years later, to any other children abused by the same person, whether or not those children were within its custodial protection. Neither legislative intent nor public policy would support such a broad extension of liability.

## III.  CONCLUSION

The judgment of the Court of Appeal is affirmed as to counts three and four (negligent misrepresentation and fraud), but reversed as to count five (negligence per se). The cause is remanded with directions to reverse the trial court's order sustaining defendants' general demurrers to counts three and four, and to affirm that order as to all remaining counts.

George, C. J., Mosk, J., and Brown, J., concurred.

**KENNARD, J., Concurring and Dissenting.**—I concur with and join in the majority opinion with the exception of part II.B. (*The Negligence Per Se*

*Count*) and that portion of part III. (*Conclusion*) reversing the Court of Appeal's judgment as to count 5 (negligence per se) and directing the Court of Appeal to affirm the trial court's order sustaining defendant's general demurrer to count 5. Unlike the majority, I conclude that plaintiff has adequately pleaded a cause of action for negligence under the doctrine of negligence per se.

The theory of count 5 of plaintiff's complaint is that the three defendant school districts that formerly employed Robert Gadams, the vice principal who sexually molested plaintiff, violated the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.; hereafter the Reporting Act) by failing to report to the proper authorities Gadams's prior incidents of sexual misconduct with students, and that this statutory violation renders them liable under the doctrine of negligence per se for the damages she suffered as a result of her molestation by Gadams.

To plead a cause of action for negligence under the doctrine of negligence per se, a plaintiff must allege these elements: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused death or injury to the plaintiff; (3) the death or injury resulted from an occurrence of the kind that the statute, ordinance, or regulation was designed to prevent; and (4) the plaintiff belonged to the class of persons for whose protection the statute, ordinance, or regulation was adopted. (Evid. Code, § 669, subd. (a).) Here, the majority concludes that count 5 of plaintiff's complaint fails to satisfy the last of these requirements because, as a matter of law, plaintiff does not belong to the class of persons for whose protection the Reporting Act was adopted. I disagree.

The Reporting Act states its legislative purpose: "The intent and purpose of this article is to protect children from abuse." (Pen. Code, § 11164, subd. (b).) The Reporting Act does not state that its purpose is to protect from abuse "some children" or only "children within the care and custody of the reporting party." No such qualification appearing in the text of the statute, this court should not insert such a qualification under the guise of statutory construction. (Code Civ. Proc., § 1858.) Instead, this court should accept at face value the Legislature's simple, unqualified statement that the Reporting Act is meant "to protect children from abuse," and it should construe the intended protected class broadly to include all children who foreseeably could be protected from abuse by compliance with its provisions.

Assuming the allegations of plaintiff's complaint are true, as we are required to do at this stage of the proceeding, plaintiff is within the protected class of children who foreseeably could have been protected from abuse had

defendants complied with the requirements of the Reporting Act. Had defendants reported Gadams's prior acts of sexual misconduct with students, it is reasonably probable that Gadams would have been criminally prosecuted or that his teaching credential would have been suspended or revoked, as a result of which he would never have been employed in the position by means of which he was able to molest plaintiff.

In this regard, I agree with the analysis of the Court of Appeal, which stated: "In the instant case, there can be no doubt that appellant was 'one of the class of persons for whose protection the [Reporting Act] was adopted.' The act was intended to protect future as well as current child abuse victims, as is evidenced by the requirement that indexed reports be made available to local licensing agencies."

The majority asserts that construing the class to be protected by the Reporting Act as including children, like plaintiff, who are later victimized by the same abuser "would impose a broader reporting obligation than the Legislature intended." (Maj. opn., *ante*, at p. 1087.) This is just not so. The scope of the reporting obligation remains the same regardless of whether future abuse victims are considered to be within the protected class. The composition of the protected class affects the scope of a reporting party's potential liability, but it has no effect on the scope of the reporting obligation.

Accordingly, I would permit plaintiff to proceed on the negligence per se theory embodied in count 5 of her complaint.

Baxter, J., and Werdegar, J., concurred.

On February 26, 1997, the opinion was modified to read as printed above.