**Mark R. PASSMORE, As Personal Representative of the Estate of Eva L. Passmore and Mark R. Passmore, Individually, Appellant (Defendant below),**

v.

**MULTI–MANAGEMENT SERVICES, INC. d/b/a/ Parke County Nursing Homes, Indiana Health Management Corp., and Lee Alan Bryant Health Care Facilities, Inc., Appellees (Plaintiff below).**

No. 61S01–0212–CV–00637.

Supreme Court of Indiana.

June 29, 2004.

---

James R. Fisher, Debra H. Miller, Thomas Schulte, Indianapolis, IN, Attorneys for Appellant.

Janet A. McSharar, Indianapolis, IN, James Hanner, Rockville, IN, John Daerr, Indianapolis, IN, Attorneys for Appellees.

George Clyde Gray, Daniel L. Robinson, Indianapolis, IN, Amicus Curiae, United Seniors Action.

SHEPARD, Chief Justice.

A nursing home hired a new worker in part on the basis of a favorable recommendation from his former employer. The claim is that this worker assaulted a patient. The patient asserts that the former employer wrongly gave a favorable recommendation and thus should be liable for the injury. The Court of Appeals affirmed summary judgment for the former employer, holding that there is no basis for liability running to patients of other nursing homes. We hold that former employers may be liable for knowing misrepresentation, adopting § 310 of the Restatement (Second) of Torts.

## Statement of Facts and Procedural History

Eva Passmore was an Alzheimer's patient who resided at the Parke County Nursing Home ("Parke County"). On November 27, 1997, she exhibited signs of pain when the nurses moved her. Further examination revealed a bruise on her lower abdomen, just above the pubic bone. After consultation with her physician, her son, and the facility's social service director, the attending nurses were directed to have the seatbelt on her wheelchair evaluated and repositioned.

Mark Passmore, Mrs. Passmore's son and personal representative, believes that the bruise was the product of an assault by Parke County's maintenance supervisor Charles Richardson. He sued Parke County and Richardson's former employer Lee Alan Bryant Nursing Care Facilities, Inc. ("Lee Alan").

Before going to work at Parke County, Richardson was a maintenance worker for Lee Alan. Lee Alan's residential supervisor of psychiatric patients, Beth Bratcher, had received several reports from residents who were Alzheimer's patients alleging misconduct between Richardson and some of the female residents in the nursing home. These were not formal complaints, but Bratcher looked into various reports and rumors; ultimately, she was unable to verify them. Bratcher informed the facility administrator, but never conducted a formal investigation or generated a written report.

Richardson was interested in a higher paying job, and he applied for a supervisory position at Parke County. Parke County sent Lee Alan a pre-printed reference form. Lee Alan administrator Susan Hein filled out the form by indicating Richardson would be eligible for re-hire at Lee Alan and checking boxes reflecting that he had generally performed his job adequate-

ly. Hein and William Collins, Richardson's direct supervisor, later stated they never heard accusations that Richardson was ever sexually involved with a Lee Alan resident while he was employed.

Parke County subsequently closed and reopened as Parke County Residential Care Center. There were rumors about Richardson at Parke County, but again nothing particularly tangible. Passmore's daughter worked at Parke County and heard stories about Richardson, but was not moved to act. Parke County later fired Richardson for having sexual relations with a mentally infirm resident. (Passmore App. at 152–155.)

The Parke Circuit Court granted summary judgment in favor of Lee Alan. The Court of Appeals affirmed, stating that Indiana does not recognize conscious or negligent misrepresentation. *Passmore v. Lee Alan Bryant Health*, 765 N.E.2d 625 (Ind.Ct.App.2002). We granted transfer. Ind. Appellate Rule 58.

Passmore asks this Court to hold that a regulated nursing facility owes a duty to third persons not to misrepresent material facts which describe qualifications and character of a former employee. He says that Sections 310 and 311 of the Restatement (Second) of Torts should apply. These allow for the recovery of damages for physical harm that results from a reasonable reliance on conscious or negligent misrepresentation.

Indiana has recognized liability for the tort of negligent misrepresentation, where there is a direct relationship between the plaintiff and defendant. *Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579 (Ind.Ct. App.1999); *See Eby v. York–Division, Borg Warner*, 455 N.E.2d 623 (Ind. Ct. App. 4 Dist.1983) (applied negligent misrepresentation under Restatement (Second) of Torts § 552 (1977)). We have declined several opportunities to extend that liability, but we are persuaded that this occasion warrants doing so.

## I. Conscious Misrepresentation

■ Other than the fact that we have not said so before, we can think of no reason why one who knowingly supplies false information in response to an employment inquiry should not be liable for physical injury that flows thereafter. Section 310 of the Restatement (Second) of Torts, defines this liability as follows:

An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor

(a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and

(b) knows

i. that the statement is false, or

ii. that he has not the knowledge which he professes.

Section 310 requires an affirmative misrepresentation. And as Passmore observes, it is not a defense to such a claim that the supplier of the misrepresentation did not intend that harm occur:

The rules stated in this Section relates to misrepresentation which, though intended to mislead another, are not intended to cause him the physical harm, where, however, the actor should realize that the harm is likely to result from the action which his misrepresentation is likely to induce. His liability is based upon the unreasonable risk of physical harm which is involved in the misrepresentations, and not upon the fact that the misrepresentations are intended to mislead.

*Restatement (Second) of Torts*, Section 310, Comment (a)

We think the formulation of § 310 fits well for allegations such as those in this case, as it did in *Randi W. v. Muroc Joint Unified School Dist.*, 14 Cal.4th 1066, 60 Cal.Rptr.2d 263, 929 P.2d 582 (1997), when the California Supreme Court applied § 310 to employment recommendations. There, a former employer who knew that the employee had committed certain offensive sexual acts gave a letter of recommendation that vouched for him without reservation. The California court said:

> Although policy considerations dictate that ordinarily a recommending employer should not be held accountable to third persons for failing to disclose negative information regarding a former employee, nonetheless liability may be imposed if, as alleged here, the recommendation letter amounts to an *affirmative misrepresentation* presenting a foreseeable and substantial risk of physical harm to a third person.

*Randi W.*, 929 P.2d at 584 (emphasis in original). The court further held that the causal link between the employment recommendation and the assault was foreseeable:

> Based on the facts alleged in the complaint, defendants could foresee that Livingston's officers would read and rely on defendant's letters in deciding to hire Gadams. Likewise, defendants could foresee that, had they not unqualifably recommended Gadams, Livingston would not have hired him. And, finally, defendants could foresee that Gadams, after being hired by Livingston, might molest or injure a Livingston student such as plaintiff.

*Id.* at 589.

Amicus United States Action correctly observes that residents of a nursing home which have relied on false information acquired during a hire are foreseeable victims of the misrepresentation. (Amicus Br. at 3.) It further notes that imposing liability under such circumstances would be consistent with this Court's earlier holding about the special care owed nursing home patients. *Stropes ex rel. Taylor v. Heritage House Children's Ctr.*, 547 N.E.2d 244 (Ind.1989).

■ The facts before the trial court on summary judgment do not reflect that Lee Alan had any substantial information indicating that Richardson had committed sexual misconduct with residents at Lee Alan when Hein completed a standard preprinted reference form. Bratcher had been unable to substantiate what she had heard about Richardson.[1] This may have constituted negligence, but it was not the stuff of knowing misrepresentation. Even adopting as we do the rule of § 310, summary judgment for Lee Alan on this point was warranted.

### III. Negligent Misrepresentation

■ That takes us to the question whether we should embrace § 311, which among other contexts contemplates liability for injury caused by negligent employment references.[2]

---

1. Even the benefit of hindsight and investigation has produced little information to suggest that Richardson assaulted Ms. Passmore. The record at summary judgment demonstrates only that Ms. Passmore had a bruise, that there had been unverifiable reports about Richardson and that Richardson had access to the patients. That Parke County fired him years later for sexual misconduct does not reflect on what Lee Alan knew in 1996. Counsel for Passmore seems to assert that Lee Alan knew that Richardson's son had a sexual encounter with a patient and they later gave him a positive recommendation without reporting the incident to the State Department as required by law. (Appellant's Br. at 6–7; Appellant's App. at 89, 94.)

2. Restatement (Second) of Torts § 311 states:

An entity may be liable for negligent misrepresentation when one negligently gives false

Imposing liability for negligence in supplying employment recommendations poses rather more complex competing policies. *See* Susan Oliver, *Opening the Channels of Communication Among Employers, Can Employers Discard Their "No Comment" and Neutral Job Reference Policies?*, 33 Val. U.L.Rev. 687 (1999) (discussing employers' dilemma of disclosing or omitting negative information in an employment reference about a former employee.) Recommendations from former employers are commonly used throughout the American economy as a basis for judging future job performance and reliability. The free flow of information about performance helps prospective employees, prospective employers, and the economy in general.

Our approach to this question is informed by our decision concerning intra-employer assessments of performance. In *Bals v. Verduzco*, 600 N.E.2d 1353 (Ind. 1992), we observed that employees do not relinquish their good reputation simply by becoming employees and are entitled to present defamation claims for falsehoods spread about them. *Id.* at 1355. In *Bals*, a discharged worker had sued his former supervisor for defamation over a series of adverse employee evaluations. We held that these reports had been "published" for purposes of defamation law even though they had been shared only with appropriate officers inside the company. *Id.* at 1356.

█ On the other hand, we observed that "free and open intracompany communications and legitimate human resource management needs" play an important role in the economy. *Id.* at 1356. We held that "protect[ing] personnel evaluation information communicated in good faith" warranted conferring a qualified privilege on the communication. *Id.* Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law. *Id.*; *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1175 (Ind.Ct.App.1983).

█ A statement protected by a qualified privilege may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in truth. *Bals*, 600 N.E.2d at 1356. Indiana precedent teaches that we prefer broader latitude be given by the qualified privilege than that provided by the Restatement § 600. *Id.* at 1356 n. 4. The defendant has the burden of proving that privilege existed on that particular occasion. *Id.* Thereafter, the plaintiff must prove that "it has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said." *Id.* at 1357.

Much the same set of considerations applies to job references provided by one employer to another. Such recommendations should not be filled with rumors and innuendo instead of facts. Without substantial evidence, employers would subject

information to another. That entity is subject to liability for physical harm caused by:
(1) Action taken by the other in reasonable reliance upon such information, where such harm results;
a. To the other, or
b. To such third persons as the actor should expect to be put in peril by the action taken.

(2) Such negligence may consist of failure to exercise reasonable care
a. In ascertaining the accuracy of the information, or
b. In the manner in which it is communicated.

themselves to possible defamation litigation, and rightly so.

On the other hand, we think it rather obvious that declaring employers liable for negligence in providing employment references will lead universally to employer reluctance to provide any information other than name, rank, and serial number. Only those employers dull-witted enough to issue free-wheeling assessments without calling their lawyers would supply any but the most rudimentary information. A legal policy that discourages providing assessments to subsequent employers will not make for safer nursing homes, or other safe workplaces, for that matter. We therefore decline to adopt § 311 as it applies to employment references. It was appropriate to grant judgment to Lee Alan on Passmore's claim of negligent misrepresentation.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.