

FILED

Jul 15 2020, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lierin A. Rossman
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

John B. Powell
Shambaugh Kast Beck & Williams,
LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Russell G. Berg,

*Appellant-Respondent,*

v.

Stacey L. Berg,

*Appellee-Petitioner.*

July 15, 2020

Court of Appeals Case No.
19A-DC-3038

Appeal from the Allen Circuit
Court

The Honorable Thomas J. Felts,
Judge

The Honorable John D. Kitch, III,
Magistrate

Trial Court Cause No.
02C01-1709-DC-1268

**Bailey, Judge.**

# Case Summary

Amid proceedings to dissolve their marriage, Russell G. Berg ("Husband") and Stacey L. Berg ("Wife") entered a mediated settlement agreement (the "Settlement Agreement") concerning the disposition of marital property, *inter alia*. The trial court adopted the Settlement Agreement in its dissolution decree. Wife later filed a Trial Rule 60(B) motion, alleging that an account was omitted from a balance sheet used at mediation. Wife raised alternative grounds for relief. On the one hand, Wife sought to avoid the Settlement Agreement by alleging fraud, constructive fraud, misrepresentation, mutual mistake, or other misconduct. On the other hand, Wife sought to enforce the Settlement Agreement by alleging that Husband breached a warranty contained therein. Upon a motion to correct error, the trial court entered *sua sponte* findings and awarded Wife half of the value of the account. Husband appeals, arguing that the judgment depends on inadmissible evidence of what occurred at mediation.

We agree that the judgment granting Wife relief under Trial Rule 60(B) relies on mediation evidence. As to admissibility, we conclude that the mediation evidence is admissible only to enforce the Settlement Agreement—an issue collateral to the mediated dispute. Moreover, although the mediation evidence is admissible for this purpose, we ultimately discern no proper basis to uphold the judgment. We therefore reverse.[1]

---

[1] Because this issue is dispositive, we need not address Husband's other appellate issues.

# Facts and Procedural History

[3]     Husband and Wife participated in mediation and negotiated the Settlement Agreement. Under the Settlement Agreement, each party retained all stock accounts held in his or her own name and Husband retained all stock accounts the parties jointly held. The Settlement Agreement disposed of other property and obligated Husband to make a property-equalization payment to Wife. At one point, the parties made mutual representations and warranties: "Each of the parties . . . represent and warrant one to the other that all assets and debts owned or owed by the parties, either individually or jointly, have been correctly and truly revealed to the other and reflected within this [Settlement A]greement." Appellant's App. Vol. 2 at 22. The Settlement Agreement also stated that, "[i]n consideration of the promises, mutual covenants and agreements herein contained, the payments herein made and the property herein to be transferred," the parties "each declare[d that] there has been a full disclosure of all their assets and liabilities and that this [Settlement A]greement is a final and complete settlement of all of their property rights[.]" *Id.* at 18-19.

[4]     On April 16, 2018, the trial court approved the Settlement Agreement and incorporated its terms into a dissolution decree. On April 15, 2019, Wife filed a verified Trial Rule 60(B) motion focused on a stock account Husband held, which was valued at about $122,000. Wife alleged that the Settlement Agreement "did not reference and therefore omitted" the stock account. Appellee's App. Vol. 2 at 2. Wife noted that Husband's counsel had disclosed the account to her lawyer. Wife alleged that her lawyer inadvertently omitted

the account from a marital balance sheet and that the parties used that balance sheet at mediation. Wife attached several exhibits, including two purported marital balance sheets that her lawyer had prepared. Wife also attached an affidavit in which she averred that "[a]t no time before or during the mediation . . . did [she] learn of the existence of the [account]" and that, had she been aware of the account, she "would not have agreed to the property disposition" set forth in the Settlement Agreement. *Id.* at 72.

[5] Husband filed a motion to strike, challenging the admissibility of the evidence attached to Wife's motion.[2] At a hearing on Wife's motion, Husband objected to "everything that is going to go into the record as all of this was information that was discussed and done during mediation." Tr. at 5. He argued that any evidence concerning "what went on during mediation, what became part of the mediated agreement" is inadmissible. *Id.* at 6. The trial court overruled Husband's objection. The trial court eventually entered an order summarily (1) denying Husband's motion to strike and (2) declining to grant Wife relief.

[6] Wife filed a motion to correct error. Although neither party had requested special findings, Wife later submitted proposed findings that the court adopted verbatim. In its written order, the court found that Wife's balance sheet "was utilized during mediation" and did not contain Husband's account. Appellant's

---

[2] The motion to strike is not included in either appendix. However, the parties do not dispute that the motion focused on the admissibility of such evidence. *See* Br. of Appellant at 7; Br. of Appellee at 7, 10, 18. Moreover, pursuant to Indiana Appellate Rule 49(B), "[a]ny party's failure to include any item in an Appendix shall not waive any issue or argument."

App. Vol. 2 at 46. The court found that (1) fraud, constructive fraud, mutual mistake, or misrepresentation had occurred and (2) Husband had breached a warranty. The court ultimately awarded Wife half of the value of the account.

[7] Husband now appeals.[3]

# Discussion and Decision

## Standard of Review

[8] In general, we review a ruling on a motion to correct error for an abuse of discretion. *State v. Reinhart*, 112 N.E.3d 705, 709-10 (Ind. 2018). However, to the extent the ruling turns on a question of law, our review is de novo. *See id.* Here, the motion to correct error involved a motion for relief under Trial Rule 60(B). The party moving for Trial Rule 60(B) relief bears the "burden . . . to demonstrate affirmatively that relief is necessary and just." *Fairrow v. Fairrow*, 559 N.E.2d 597, 599 (Ind. 1990); *see also Gipson v. Gipson*, 644 N.E.2d 876, 877 (Ind. 1994). Ordinarily, "the propriety of relief under . . . Trial Rule 60(B) is a matter entrusted to the trial court's equitable discretion." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 812 (Ind. 2012). However, where—as here—a Trial Rule 60(B) motion is directed toward a marital settlement agreement, the court must approach the matter "as a contract dispute, subject to the rules of contract

---

[3] Husband's brief contains an argumentative Statement of Facts. We remind counsel that the Statement of Facts should be in narrative form and stated in accordance with the standard of review. *See* Ind. Appellate Rule 46(A)(6); *In re Paternity of C.B.*, 112 N.E.3d 746, 750 n.1 (Ind. Ct. App. 2018), *trans. denied*.

law." *Ryan v. Ryan*, 972 N.E.2d 359, 370-71 (Ind. 2012) (noting that "a court's exercise of power under Trial Rule 60(B) is subject to the limitations of the substantive law" and that provisions of the Indiana Code limit a court's power to modify a marital settlement agreement); *cf. Snow v. England*, 862 N.E.2d 664, 668 (Ind. 2007) ("As with other contracts, a division of property may only be modified according to the terms of the agreement, if the parties[] consent, or if fraud or duress occurs." (citing Ind. Code §§ 31-15-2-17(c) & 31-15-7-9.1)).[4]

[9] Further, where, as here, a court enters findings without a timely written request, the findings control only the issues they cover, Ind. Trial Rule 52(D), and we will disturb the judgment only if clearly erroneous, T.R. 52(A). A judgment is clearly erroneous if the evidence does not support the findings and the findings do not support the judgment. *See S.H. v. D.W.*, 139 N.E.3d 214, 220 (Ind. 2020). To the extent an issue is not covered by the findings, we apply a general-judgment standard under which we "affirm based on any legal theory supported by the evidence." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123-24 (Ind. 2016).

[10] As to the findings, Husband points out that the court adopted Wife's proposed findings verbatim. We note that a trial court is not prohibited from adopting a party's proposed findings, however, the practice "'weakens our confidence' that those findings were 'the result of considered judgment.'" *River Ridge Dev. Auth.*

---

[4] Thus, to the extent the parties focus on Trial Rule 60(B)—including provisions permitting relief for mistake, misrepresentation, fraud, or other misconduct—we address their arguments under the rules of contract law.

*v. Outfront Media, LLC*, No. 19S-PL-645, 2020 WL 2781884, at *6 (Ind. May 29, 2020) (quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003)).

# Mediation

Husband argues that the court "relied on inadmissible evidence in granting" Wife relief under Trial Rule 60(B). Br. of Appellant at 13. Specifically, Husband asserts that mediation evidence—*i.e.*, evidence of what transpired at mediation—"is subject to the [Indiana Rules for] Alternative Dispute [Resolution] and is deemed confidential, and not admissible[.]" *Id.* at 16.[5]

Mediation is a "confidential process" during which a neutral person—a mediator—"assists the litigants in reaching a mutually acceptable agreement." Ind. Alternative Dispute Resolution Rule 2.1. "Evidence discoverable outside of mediation shall not be excluded merely because it was discussed or presented in the course of mediation." A.D.R. 2.11(B)(2). However, mediation itself "shall be regarded as settlement negotiations governed by Indiana Evidence Rule 408." A.D.R. 2.11(B)(1). As to Evidence Rule 408, the rule provides that

---

[5] The dissent asserts that Husband waived this issue by failing to make cogent argument as required by Indiana Appellate Rule 46(A)(8)(a). However, Husband framed the issue, quoted the applicable rules, and directed us to caselaw concerning the admissibility of mediation evidence. We discern no waiver here. In any case, "'we prefer to resolve cases on the merits' instead of on procedural grounds like waiver." *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (quoting *Roberts v. Cmty. Hosps. of Ind., Inc.*, 897 N.E.2d 458, 469 (Ind. 2008)). As our Supreme Court explained, "unless we find a party's 'non-compliance with the rule sufficiently substantial to impede our consideration of the issue raised,' we will address the merits of his claim." *Id.* (quoting *Guardiola v. State*, 375 N.E.2d 1105, 1107 (1978)). In this case, our review has not been impeded.

[e]vidence of the following is not admissible . . . to prove or disprove the validity or amount of a disputed claim . . . :

(1) furnishing, promising, or offering, or accepting, promising to accept, or offering to accept a valuable consideration in order to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

[13]     Notably, Indiana Evidence Rule 408 has an exception that allows such evidence to be admitted "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Ind. Evidence Rule 408(b). The Indiana Supreme Court has explained that this exception allows mediation evidence to be used "in collateral matters unrelated to the dispute that is the subject of the mediation." *Horner v. Carter*, 981 N.E.2d 1210, 1212 (Ind. 2013). For example, in *Gast v. Hall*, this Court applied the exception in Rule 408 where the mediation evidence—*i.e.*, a person's unusual statements at mediation—was offered to prove that the person later lacked testamentary capacity. 858 N.E.2d 154, 161-62 (Ind. Ct. App. 2006), *trans. denied*. The exception applied in *Gast* because the issue of testamentary capacity was collateral to the mediated dispute. *See id.* In contrast, in *Horner*, our Supreme Court concluded that the exception did not apply when the mediation evidence—*i.e.*, what was said at mediation—was offered to prove what the parties meant by an ambiguous provision in their mediated agreement. 981 N.E.2d at 1212 (noting that the

proffered mediation evidence was "akin to the offer or acceptance of a compromise on a claim of disputed liability or validity"). The exception did not apply in *Horner* because the issue was not collateral; the proponent was trying to prove up the very compromise the parties reached at mediation. *See id.*

[14] In deciding *Horner*, our Supreme Court explained that "Indiana policy strongly favors the confidentiality of all matters that occur during mediation." 981 N.E.2d at 1211. Moreover, the Court reiterated that "Indiana judicial policy strongly urges the amicable resolution of disputes and thus embraces a robust policy of confidentiality of conduct and statements made during negotiation and mediation." *Id.* at 1212. While acknowledging competing policy concerns, the Court emphasized the value of dispute resolution: "The benefits of compromise settlement agreements outweigh the risks that such policy may on

occasion impede access to otherwise admissible evidence on an issue." *Id.* at 1212.[6]  With *Horner*'s policy concerns in mind, we turn to the matter at hand.[7]

[15]  Wife offered evidence of what transpired at mediation, contending that the parties relied on an incomplete marital balance sheet.  Husband argues that the judgment cannot stand without evidence of what occurred at mediation.  We

---

[6] It seems that this policy preference animates Indiana Evidence Rule 408, mandating the exclusion of more evidence than our sister courts would exclude under the substantially similar federal rule.  *Compare* Evid. R. 408 *with* Fed. R. Evid. 408.  In *Horner*, our Supreme Court concluded that our Evidence Rule 408—incorporated by the Indiana Rules for Alternative Dispute Resolution—prohibited admitting statements made during settlement negotiations to resolve ambiguity in a mediated settlement agreement.  981 N.E.2d at 1212-13.  However, in *Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.*, the Fourth Circuit determined that a settlement offer could be admitted to resolve ambiguity, reasoning that the evidence was not offered to prove liability or damages but instead "offer[ed] as evidence of the parties' intent" in entering the non-mediated settlement agreement.  973 F.2d 349, 353-54 (4th Cir. 1992); *cf. Thomas v. Thomas*, 674 N.E.2d 23, 26 (Ind. Ct. App. 1996) (deciding, prior to *Horner*, that statements made during negotiations were admissible "to show [a] mistake" in a non-mediated marital settlement agreement), *trans. denied*.

Moreover, under the federal approach, evidence of statements during negotiations would also be admissible to prove wrongful conduct.  *See, e.g.*, Fed R. Evid. 408 advisory committee's note (noting that the exclusionary rule is "inapplicable" if the evidence is "offered to show that a party made fraudulent statements in order to settle a litigation").  Indeed, as the Sixth Circuit explained, the exclusionary rule is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions" in that the rule "does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations."  *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293 (6th Cir. 1997) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5314 (1st ed. 1980)); *accord Flood v. Katz*, 294 S.W.3d 756, 763 (Tex. Ct. App. 2009) (reaching a similar conclusion when applying an analogous state evidentiary rule), *review denied*.  However, under *Horner*, it does not appear that proving that (1) a wrong occurred during mediation (2) ultimately affecting the settlement agreement would be proving a "collateral matter[] unrelated to the dispute that is the subject of the mediation."  981 N.E.2d at 1212.  It could be that the confidential nature of mediation confers additional protection and Indiana would follow the federal approach when negotiations occurred outside of mediation.  *But cf. Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 821 (Ind. 2012) (expressing concern about "chill[ing] the negotiating process" and noting that "it seem[ed] inappropriate to consider statements made in the context of settlement negotiations" concerning a prior—ultimately unsuccessful—lawsuit between parties "as proof of whether one party committed blacklisting" by filing that prior lawsuit).  Regardless, the instant case involves a mediated settlement agreement and so it falls squarely within *Horner*.

[7] We observe that neither party has cited *Horner*.  To the extent the dissent suggests that it is improper to discuss and apply *Horner* to the issues presented in this case, we note that this Court is tasked with analyzing whether (1) the evidence supports the findings and the findings support the judgment or (2) whether the evidence supports affirming on any other basis.  *See* T.R. 52(A) & 52(D); *Steele-Giri*, 51 N.E.3d at 123-24.

agree with Husband. Although Wife directs us to evidence of two incomplete balance sheets, that evidence—standing alone—does not indicate that the parties actually relied on an incomplete balance sheet. In other words, even if Wife proves that a balance sheet at one point omitted the account, Wife may feasibly recover only if that omission was not later remedied at mediation.[8] Thus, mediation evidence is essential to the judgment. Having concluded as much, we must consider whether the evidence is admissible under Rule 408. As to admissibility, we generally review an evidentiary ruling for an abuse of discretion. *Patchett v. Lee*, 60 N.E.3d 1025, 1028 (Ind. 2016). However, when the ruling "depends on the interpretation of a statute, case law, or a rule of evidence," the ruling "presents a legal question [that] we review de novo." *Id.*

[16] Here, Wife offered the evidence to either (1) avoid the Settlement Agreement or (2) enforce the Settlement Agreement. The trial court admitted the evidence for both purposes, finding that Wife was entitled to relief under either approach.

## Avoidance

[17] The trial court found that, under the circumstances, Wife could avoid the Settlement Agreement due to fraud, constructive fraud, mutual mistake,

---

[8] The dissent asserts that "Husband has never disputed that the omission was not remedied at mediation." *Infra* at 19 n.13. Critically, however, it is Wife who bore the "burden . . . to demonstrate affirmatively" her entitlement to relief under Trial Rule 60(B). *Fairrow*, 559 N.E.2d at 599. Below, Husband argued that Wife's motion involved inadmissible mediation evidence. Without such evidence, Wife could not prevail on her motion. Husband had no obligation to offer controverting evidence and to require such evidence would be to improperly shift a burden to the non-movant. *See id.* Ultimately, Husband should prevail on appeal if his evidentiary challenge is meritorious. *See id.*

misrepresentation, or other misconduct. Regarding those various grounds for relief, the mediation evidence was used to shed light on why Wife agreed to the disposition of assets in the Settlement Agreement. We conclude that, under our Supreme Court's binding precedent in *Horner*, mediation evidence cannot be admitted for that non-collateral purpose. As in *Horner*, the evidence is "akin to the offer or acceptance of a compromise on a claim of disputed liability or validity." 981 N.E.2d at 1212. Thus, the evidence must be excluded under Evidence Rule 408 in light of Indiana's "robust policy of confidentiality of conduct and statements made during negotiation and mediation." *Id.*

[18] Without the mediation evidence, there is insufficient evidence to find that Wife could avoid the Settlement Agreement.[9] Thus, to the extent the judgment in favor of Wife is based on principles of contract avoidance, the trial court erred.[10]

## Enforcement

[19] The court also found that Wife was entitled to relief because Husband breached a warranty in the Settlement Agreement. Under *Horner*, discussions involved in negotiating and reaching a final settlement agreement are excluded from

---

[9] We therefore do not address Wife's caselaw regarding grounds for avoiding the Settlement Agreement.

[10] We note, as our Supreme Court noted in *Horner*, that the Uniform Mediation Act "would permit disclosure and discovery of conduct and statements during mediation if not otherwise available, . . . subject to a cautious balancing to ascertain whether the need for such evidence substantially outweighs the interest in protecting confidentiality." 981 N.E.2d at 1212 n.1; *see* Uniform Mediation Act § 6(b) (setting forth a balancing test for admitting mediation evidence in "a proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation"). However, "Indiana has not adopted the [Uniform Mediation Act.]" *Horner*, 981 N.E.2d at 1212 n.1.

subsequent disputes unless the dispute involves a distinct collateral matter. 981
N.E.2d at 1212. Enforcement of the terms of the Settlement Agreement would
be such a collateral matter. *See id.*; *accord Cates v. Morgan Portable Bldg. Corp.*,
780 F.2d 683, 691 (7th Cir. 1985) (determining that the analogous federal rule
would not bar evidence from settlement negotiations offered to prove breach
(citing *Cent. Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939 (7th Cir. 1982)).
Thus, the exception in Rule 408 would allow the admission of mediation
evidence for the collateral purpose of enforcing the Settlement Agreement. *See
Horner*, 981 N.E.2d at 1212 (noting that mediation evidence is admissible "in
collateral matters unrelated to the dispute that is the subject of the mediation").

[20] Having resolved the evidentiary issue, we turn to whether the trial court
properly granted relief based on a breach of a warranty. We observe that the
meaning of a contract is a question of law. *Heraeus Med., LLC v. Zimmer, Inc.*,
135 N.E.3d 150, 152 (Ind. 2019). Clear and unambiguous provisions are
"deemed conclusive" and, when they are present, "we will not construe or look
to extrinsic evidence" and will instead apply the provisions. *AM Gen. LLC v.
Armour*, 46 N.E.3d 436, 440 (Ind. 2015) (quoting *Ryan*, 972 N.E.2d at 364).

[21] A warranty is a promise about a fact, *e.g.*, "I warrant that the river will not run
dry." *See* 1 Timothy Murray, *Corbin on Contracts* § 1.14 (rev. ed. 1993)
("*Corbin*") ("A promise may be expressed in the form of a warranty . . . . [A
party] may warrant that a horse is sound and free from defects, or that a steel
rail is free from internal and invisible flaws, or that the ship "Peerless" arrived
in Amsterdam the day before yesterday."). When a party makes a warranty,

the party is guaranteeing that the factual assertion is true. *See* Black's Law Dictionary (11th ed. 2019) (defining the verb "warrant" as "[t]o promise or guarantee"); *see also* 13 Richard A. Lord, *Williston on Contracts* § 38:19 (4th ed. 2013) (noting that "warranty" has a "primary meaning of obligation").

As Judge Learned Hand explained:

> A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue[.]

*Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946). In other words, when a promisor makes a warranty, "the promisor has assumed responsibility for [the] fact." Corbin, § 1.14. Thus, if the fact is untrue or becomes untrue, the promisor is in breach and liable for damages. *See, e.g.*, Restatement (First) of Contracts § 327 (Am. Law. Inst. 1932) (stating that, in general, "a judgment for damages will be given for any breach of contract, unless the right of action has been suspended or discharged"). There is a useful example in the Restatement (Second) of Contracts: "A, the builder of a house, or the inventor of the material used in part of its construction, says to B, the owner of the house, 'I warrant that this house will never burn down.' This includes a promise to pay for harm if the house should burn down." § 2 cmt. d (Am. Law Inst. 1981).

Here, the court quoted the following language from the Settlement Agreement, identifying a breach of the first warranty: "Each of the parties . . . represent and

warrant one to the other that all assets and debts owned or owed by the parties, either individually or jointly, have been [1] correctly and truly revealed to the other and [2] reflected within this [Settlement A]greement." *Id.* at 21-22.[11]

[24] Critically, both warranties are mutual. That is, Husband **and** Wife assumed responsibility for the factual assertions. Therefore, assuming *arguendo* that the factual assertions in both warranties were untrue, both Husband and Wife breached the warranties. It is also notable that Husband and Wife made similar factual assertions when they "declar[ed that] there has been a full disclosure of all their assets and liabilities and that this [Settlement A]greement is a final and complete settlement of all of their property rights and payments[.]" *Id.* at 18.

[25] "In the absence of fraud, accident, or mistake, parties to a contract and their privies are estopped to deny facts agreed on or assumed in the making of the contract." 31 C.J.S. Estoppel and Waiver § 72. Indeed, "[i]f, in making a contract, the parties agree on or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact of the contract." *Id.* Ultimately, "[p]arties who have expressed their mutual assent are bound by

---

[11] The quotation contains both representations and warranties. We focus on the warranties because, unless a contract provides otherwise, a factual assertion set forth in a representation is not an enforceable promise; rather, a misrepresentation provides a contract defense that might (1) vitiate mutual assent; (2) make the contract voidable; or (3) justify reformation. *See generally* Restatement (Second) of Contracts §§ 159, 163, 164, & 166 (Am. Law. Inst. 1981). Of course, a misrepresentation might also be tortious. *See Doe #1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 207 n.5 (Ind. 2017) (discussing fraudulent misrepresentation, both actual and constructive); *Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004) (discussing negligent misrepresentation). In any case, as earlier discussed, mediation evidence is inadmissible to prove a ground for avoidance. Moreover, assuming *arguendo* that the evidence is admissible, for the reasons hereafter discussed, Wife is estopped from obtaining relief because Wife is disputing the truth of her own assertions.

the contents of the instrument they have signed, and may not thereafter claim that its provisions do not express their intentions or understanding." *Id.*; *cf. Stevens v. State Farm Fire & Cas. Co.*, 929 S.W.2d 665, 672 (Tex. Ct. App. 1996) (noting that "[e]stoppel by contract is a form of quasi estoppel" in that "[t]he rule . . . is just another way of saying that a party is bound by the terms of his contract unless it is void or is annulled or set aside in some way"), *writ denied*.

As earlier discussed, Wife may not avoid the Settlement Agreement. Therein, Wife asserted that all assets had been disclosed and reflected in the terms. Wife is estopped from claiming that her assertions are untrue.[12] *See id.*; *cf. Gray v. State*, 78 Ind. 68, 71-72 (1881) (determining that parties to an instrument were estopped from disputing the truth of a recital in the instrument); *Lebo v. Bowlin*, 189 N.E. 397, 399 (Ind. Ct. App. 1934) (en banc) ("[I]t is the law that a recital of a particular fact is the basis for an estoppel."). Thus, we discern no proper basis to uphold the judgment on a theory that Husband breached a warranty.

# Conclusion

Because the proffered mediation evidence is inadmissible to prove a ground for contract avoidance, Wife is bound by the terms of the Settlement Agreement. Moreover, although mediation evidence potentially can be used to address

---

[12] Regardless of estoppel, Wife is not entitled to relief based on the warranty regarding disclosure. Although Wife maintains that she was unaware of the account, Wife alleged that Husband's counsel disclosed the account to her lawyer. That knowledge is imputed to Wife. *See Prudential Ins. Co. of Am. v. Winans*, 325 N.E.2d 204, 206 (Ind. 1975) (noting that the knowledge of an agent is generally imputed to his principal).

collateral issues, in this case, Wife is estopped from pursuing such an action. Thus, we conclude that the trial court erred in granting the motion to correct error and awarding Wife half of the value of the account.

[28]    Reversed.


Altice, J., concurs.
Crone, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Russell G. Berg,<br>*Appellant-Respondent,*<br><br>v.<br><br>Stacey L. Berg,<br>*Appellee-Petitioner.* | Court of Appeals Case No.<br>19A-DC-3038 |

**Crone, Judge, dissenting.**

[29] In support of her motion for relief from judgment, Wife submitted ten exhibits to substantiate her claim that Husband's stock account had been omitted from the marital estate – a fact that Husband does not dispute – as a result of either mutual mistake or fraud. The trial court's order granting Wife's motion to correct error references and relies on several of those exhibits. Husband makes the following argument that the exhibits are inadmissible pursuant to Evidence Rule 408:

> All of the information contained in paragraph four of the Order, including all subparagraphs, were alleged discussions and communications had in anticipation of mediation. Paragraph five of said order further contemplates additional discussions had between counsel in anticipation of mediation. Paragraphs six and seven contemplate information that occurred during the mediation setting itself.

Appellant's Br. at 13.  In my view, this argument falls far short of establishing that the trial court abused its discretion in relying on Wife's exhibits.  Husband cites no authority for the proposition that "discussions and communications had *in anticipation of mediation*" are inadmissible pursuant to Evidence Rule 408. And, as Wife points out, the handwritten marital balance sheet mentioned in paragraph six, which was prepared during mediation, is essentially cumulative of her counsel's notes mentioned in paragraph seven, which were prepared before mediation, as neither exhibit includes Husband's stock account among the parties' assets.[13]

[30]  Indiana Appellate Rule 46(A)(8)(a) provides that an appellant's argument "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning" and citation to relevant authorities.  "Failure to present a cogent argument results in waiver of the issue on appeal." *Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019).  I would find Husband's argument on this issue waived for lack of cogency.[14]  I find no merit in his remaining arguments, and therefore I would affirm the trial court.[15]

---

[13] The majority asserts that "even if Wife proves that a balance sheet at one point omitted the account, Wife may feasibly recover only if that omission was not later remedied at mediation."  Slip op. at 11.  Husband has never disputed that the omission was not remedied at mediation.

[14] Husband's failure to include his motion to strike Wife's exhibits in his appellant's appendix is inexcusable. If the arguments made in that motion are as lacking in cogency as the arguments made in his appellant's brief, I would find waiver on the basis that he had failed to preserve the issue for appeal.

[15] The majority's analyses regarding *Horner*, avoidance, enforcement, and warranty go far beyond the scope of any argument raised by Husband.