Filed 5/23/25  Herrera v. Palmore CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARACELI GONZALEZ HERRERA, | B331883 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. Nos. BC624620, 22STCV31771 |
| JACQUELINE PALMORE, | |
| Defendant and Respondent. | |
| ARACELI GONZALEZ HERRERA, | B332793 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. Nos. BC624620, 22STCV31771 |
| GLACIAL GARDEN SKATING ARENAS, LLC, | |
| Defendant and Respondent. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Reversed with directions.

Herzog Yuhas Fournier & Ardell, Ian Herzog and Evan D. Marshall for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, Maria K. Pleše, Caroline J. Cordova; Hayes, Scott, Bonino, Ellingson & Guslani, Mark G. Bonino and Rachel M. Smith for Defendant and Respondent Glacial Garden Skating Arenas, LLC.

Gordon Rees Scully Mansukhani, Craig J. Mariam and Michael J. Dailey for Defendant and Respondent Jacqueline Palmore.

---

These consolidated appeals involve two separate actions Araceli Gonzalez Herrera (plaintiff) filed against Glacial Garden Skating Arenas, LLC (Glacial)[1] and, later, against Glacial's employee Jacqueline Palmore, related to horrific abuse she suffered as a child at the hands of her ice skating coach. After the trial court consolidated the cases for all purposes, it sustained Palmore's demurrer to plaintiff's first amended complaint (FAC). The court then granted summary judgment in favor of Glacial as plaintiff's claims against it were based solely on its vicarious liability for the alleged actions of Palmore. Plaintiff challenges both orders.

---

[1] Plaintiff—then a minor, known as Annie G.—filed her original complaint in 2016 against Donald J. Vincent; Paramount Iceland Skating Rink, Inc. (Iceland), an ice rink where Vincent coached plaintiff and abused her; Darlene Sparks, Iceland's employee; and the United States Figure Skating Association. Plaintiff amended her complaint to name as defendants Glacial, its owner, another ice rink, and the Professional Skaters Association. We refer to this action as the "Glacial-Iceland" action.

2

We conclude plaintiff's allegations against Palmore are consistent with those a different panel of this court held would be sufficient to state causes of action for misrepresentation against Glacial.[2] We therefore reverse the judgments with directions.

## BACKGROUND[3]

Glacial operated an ice skating rink that offered classes, coaching, and competitions for youth figure skaters. Palmore, the skating director, was responsible for hiring, supervising, and terminating skating coaches. Vincent was a coach and skating school instructor for Glacial from June 2007 to August 2008. During his employment, Vincent had " 'boundary issues,' "

[2] *Annie G. v. Glacial Garden Skating Arenas, LLC* (Sept. 17, 2020, B293351) [nonpub. opn.] (*Annie G.*). There, we reversed the trial court's order sustaining without leave to amend plaintiff's third amended complaint (TAC) in the Glacial-Iceland action. We issued our remittitur on June 21, 2021.

[3] As plaintiff appeals from the sustaining of Palmore's demurrer—and the order granting Glacial summary judgment was based on that ruling—we draw our statement of facts from the operative pleadings and other matters subject to judicial notice. (*Hanouchian v. Steele* (2020) 51 Cal.App.5th 99, 103 (*Hanouchian*).) We take judicial notice of our court file in *Annie G.* (case number B293351) for the existence of the documents and records before us when we decided that related appeal, and of our unpublished opinion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a); see, e.g., *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7 [court may take "judicial notice of the existence of judicial opinions and court documents, along with the truth of the results reached—in the documents such as orders, statements of decision, and judgments—but cannot take judicial notice of the truth of hearsay statements in decisions or court files"].)

and engaged in suspect behavior with minor skating students, including John S. Doe, a youth Vincent coached. Palmore became aware of Vincent's behavior. Glacial reprimanded Vincent and gave him warning notices for inappropriate behavior with his minor students. Palmore gave Vincent his "final warning" in December 2007. In August 2008, Glacial fired Vincent after another coach caught Vincent in a dark, locked " 'coaches only' lounge" with a minor skater. The minor was hiding under a bench where Vincent sat. The coach reported the incident to Palmore. She fired Vincent on August 1, 2008.

"Vincent then went to . . . Iceland"—bringing John S. Doe with him—where he was "employed . . . from August 2008 to December 2011."[4] The Iceland skating rink also had youth programs in both recreational and competitive ice skating. Sparks was Iceland's manager and director of skating.

"In 2009, when Vincent was seeking to be put on staff at [Iceland]," Sparks called Glacial and spoke to Palmore "to ascertain if there was any reason Vincent should not be allowed to teach at [Iceland]." Palmore responded, " 'No, everything's fine.' " She did not tell Sparks Glacial had terminated Vincent

---

[4] The operative fourth amended complaint (4AC) against Glacial alleged Vincent brought John S. Doe with him to Iceland in early August 2008, "immediately after" Glacial fired him. The 4AC also alleges, "In the beginning of August, 2008, immediately after Vincent was fired by Glacial . . ., Iceland considered hiring Vincent as an ice skating coach (to teach group and individual classes)."

4

"for suspected child molestation and boundary violating behavior" or mention the incident that led to his firing.[5]

Vincent began coaching plaintiff at Iceland—and abusing her—in 2009. Had Palmore "spoken the truth, Sparks and [Iceland] would not have put Vincent on staff and he would not have been [p]laintiff's coach or been able to engage in" the alleged abusive conduct.[6] Iceland fired Vincent in December 2011 for "suspected molestation of minor skating students." In January 2014, Vincent was convicted of multiple felonies for his sexual abuse of plaintiff and another of his minor skating students.

Plaintiff, through her guardian ad litem, sued Glacial and others for damages she suffered as a result of Vincent's abuse, amending her complaint several times. Plaintiff's second amended complaint alleged causes of action against Glacial for negligence, negligent and intentional misrepresentation, negligent and intentional infliction of emotional distress, negligent hiring and retention, negligent training and supervision, and failure to warn. The trial court sustained

---

[5]     Plaintiff did not learn of this conversation until she had perfected her appeal in *Annie G.*, discussed below. The FAC also alleges that, after Glacial fired Vincent, he "applied for employment" at Iceland, "where his application was vetted by . . . Sparks," who called Palmore with whom she had the conversation alleged above. The 4AC alleged that, when Vincent moved to Iceland, "Iceland and Sparks performed a background check. [Sparks] checked the prior rink (Glacial . . .) and was not notified by Glacial . . . when asked" that it had terminated Vincent for suspected abusive behavior.

[6]     The abuse plaintiff endured is set forth in detail in *Annie G.*

5

Glacial's demurrer without leave to amend on the negligent and intentional misrepresentation causes of action and granted leave to amend on the others. Plaintiff filed the TAC. Glacial demurred and the trial court sustained the demurrer without leave to amend. Judgment was entered in favor of Glacial and plaintiff appealed.

In February 2019, after the perfection of plaintiff's appeal, Sparks gave a deposition at which she testified—as we stated in *Annie G.*—"that Palmore had misled her as to Vincent's suitability as a coach and withheld vital information which would have caused Iceland not to employ him." We denied plaintiff's motion to take evidence on appeal and her request that we take judicial notice of Sparks's deposition testimony. We held, however, that plaintiff had demonstrated she could amend the TAC to state causes of action for negligent and intentional misrepresentation against Glacial based on Sparks's testimony—namely, that "in 2009, when Vincent was seeking to be put on staff at Iceland, she called Glacial . . . and asked Palmore if there was any reason she should not hire" him, and "Palmore responded, 'No, everything's fine.' " (*Annie G.*) Accordingly, we concluded that, although Glacial owed no general duty of care to plaintiff, "once Sparks inquired about Vincent's fitness, [Glacial] had a duty to not misrepresent those facts because it was reasonably foreseeable that Vincent would engage in the same behavior at Iceland and that there was a risk of serious physical harm to his minor skating students, including [plaintiff]." (*Ibid.*)

We thus directed the trial court to vacate its order sustaining Glacial's demurrer without leave to amend and to allow plaintiff to amend her causes of action for negligent and

6

intentional misrepresentation against Glacial. We agreed with the trial court, however, that plaintiff's other causes of action—for negligence and intentional infliction of emotional distress—failed, and we directed the trial court to sustain the demurrer without leave to amend as to them. (*Annie G.*)

On July 29, 2021, plaintiff filed her 4AC against Glacial, to which Glacial demurred and moved to strike.[7] On January 25, 2022, the trial court overruled the demurrer as to the third, fourth, and fifth causes of action for negligent misrepresentation, intentional misrepresentation and concealment, and fraud and intentional deceit, respectively. The trial court found plaintiff had added the allegations this court had "made clear . . . were sufficient to state claims for fraud by concealment and misrepresentation."

Plaintiff sued Palmore in September 2022. On December 19, 2022, plaintiff filed the FAC alleging causes of action for negligence, intentional misrepresentation, fraud and deceit, and intentional infliction of emotional distress.[8] Palmore demurred to, and moved to strike, the FAC. As relevant here, Palmore argued the FAC was a sham pleading that contradicted allegations plaintiff had made in the TAC in the Glacial-Iceland action; plaintiff's misrepresentation claim failed as it could not

---

[7] The 4AC included causes of action against which our remittitur in *Annie G.* had directed the court to sustain Glacial's demurer without leave to amend. The trial court thus sustained the demurrer to the 4AC on those claims.

[8] Plaintiff does not challenge the court's order sustaining the demurrer on her claim for intentional infliction of emotional distress.

7

allege Sparks relied on Palmore's alleged statements in deciding to hire Vincent because he already was working at Iceland at the time of the alleged call; and plaintiff had abandoned her statutory fraud claim and failed to plead reliance in any event.

In opposition, plaintiff argued there was no sham pleading. Rather, plaintiff had discovered new evidence—Sparks's testimony about her call to Palmore—and had amended her allegations accordingly. Plaintiff also argued Palmore assumed a duty of care to those foreseeably injured by "her negligent decision to speak falsely," including plaintiff; and the FAC sufficiently pleaded causes of action for misrepresentation.

The matter was heard on April 20, 2023.[9] The court's tentative ruling was to sustain the demurrer, but (1) to construe the negligence cause of action as one for negligent misrepresentation and allow plaintiff to clarify the timeline given plaintiff did not dispute Iceland hired Vincent in 2008; and (2) on the intentional misrepresentation claim, to allow plaintiff to show (a) how the conversation between Sparks and Palmore happened at a time that could have induced reliance, and (b) how Sparks would have acted differently if Palmore "had spoken truthfully."

Palmore's counsel argued the court should not grant leave to amend on the misrepresentation causes of action. Counsel argued the FAC was a sham pleading, and plaintiff could not allege Sparks relied on Palmore's 2009 statements in hiring Vincent because the FAC—and earlier complaints in the Glacial-Iceland action—alleged Vincent was hired in 2008. The court asked plaintiff's counsel to make a proffer as to the facts showing reliance. Counsel argued Sparks's call with Palmore resulted in

---

[9] The two actions were consolidated on March 9, 2023.

8

the retention of Vincent, and Sparks would not have kept Vincent on staff—and he thus "never would have gotten his hands on" plaintiff—had Palmore not misrepresented his fitness as a coach. The court noted plaintiff alleged in her TAC in the Glacial-Iceland action that Sparks witnessed Vincent engaging in suspicious behavior with minors immediately after Iceland hired him but did nothing.[10]  Plaintiff's counsel noted those allegations were based on "information" and Iceland had "hotly contested" them.  The factual issue never was decided because plaintiff settled the part of the case against Iceland.  Counsel argued the FAC's allegations were based on facts that had developed after Sparks's deposition and that testimony had been before this court.  Counsel asserted "the facts as I understand them as they have been developed, is that after Vincent was at [Iceland], there was suspicion.  A call was made to Palmore in which . . . Sparks said that she was told by Palmore there was no problem, and she let Vincent remain. . . .  And then thereafter, [plaintiff] became a student.  And but for that, these atrocious acts would not have occurred."

The court found "it [was] not possible for the argument relating to reliance to work" because Vincent worked for Iceland

---

[10]    The court took judicial notice of the TAC.  The TAC alleged, "In the beginning of August, 2008, immediately after Vincent was fired by Glacial . . ., he brought John S. Doe with him to Iceland. Vincent employed the same patterns of behavior with John S. Doe at Iceland as he had at Glacial . . . .  When Vincent came to Iceland, Sparks knew about the incident in the coaches[ ] only room and that Glacial . . . fired Vincent."  It also alleged that "despite having knowledge of Vincent's inappropriate conduct with John S. Doe prior to [plaintiff]," Sparks "failed to intervene, and instead supported and encouraged the relationship."

from 2008 to 2011, but the call with Palmore took place in 2009. The court found the argument that Sparks relied on Palmore's conversation to retain Vincent was "not supported, especially in light of the fact that in the same claim, plaintiff alleges that Sparks noted immediately after Vincent was hired, inappropriate contact of minors."[11] The court ruled it was not persuaded by plaintiff's proffer and therefore sustained the demurrer without leave to amend. On May 8, 2023, the court entered final judgment in favor of Palmore. Plaintiff appealed.

On May 30, 2023, Glacial filed a motion for summary judgment on the ground the judgment in favor of Palmore established it could not be liable for any misrepresentation or concealment. Plaintiff opposed the motion, contending the non-final judgment in favor of Palmore did not support a preclusion claim, and the law of the case established the pleading against Glacial was sufficient. The court granted Glacial's motion and entered judgment in its favor on August 24, 2023. Plaintiff appealed.

We consolidated plaintiff's two appeals for briefing, argument, and decision.

## DISCUSSION

### 1.     *Standard of review*

"We review a judgment of dismissal after an order sustaining a demurrer de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] We 'assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are

---

[11]     That allegation was not in the FAC against Palmore, but in the TAC in the Glacial-Iceland case.

10

judicially noticeable.' " (*Hanouchian, supra,* 51 Cal.App.5th at p. 106; see also *Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015 [court assumes the truth of "facts that reasonably can be inferred from those expressly pleaded"].)  We "also 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 (*Quelimane*).)  When a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

We also review de novo an order granting summary judgment.  (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.)  Here, the order granting Glacial summary judgment was based solely on the judgment of dismissal in favor of Palmore.

**2.** ***The sham pleading doctrine does not apply here***

    a.     *Applicable law*

"When reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true.  [Citation.]  In addition, in the interests of justice, on demurrer, a court will also consider judicially noticeable facts, even if such facts are not set forth in the complaint.  [Citation.]  In particular, appellate courts should judicially notice any fact of which the trial court took proper judicial notice." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, fn. omitted (*Cantu*).)  Thus, "[b]oth trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as

11

established facts from both the same case *and other cases*." (*Ibid.*)

"A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false.  [Citation.]  Likewise, the plaintiff may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false." (*Cantu, supra*, 4 Cal.App.4th at p. 877, italics omitted; *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425 (*Deveny*) ["Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment."].)  " ' "The principle is that of *truthful pleading*." '  [Citation.]  When the plaintiff pleads inconsistently *in separate actions*, the plaintiff's complaint is nothing more than a sham that seeks to avoid the effect of a demurrer.  [Citations.]  Under such circumstances, the court will disregard the falsely pleaded facts and affirm the demurrer." (*Cantu*, at pp. 877–878.)

The sham pleading doctrine, however, "is not ' "intended to prevent honest complainants from correcting erroneous allegations . . . or to prevent correction of ambiguous facts." ' [Citation.]  Instead, it is intended to enable courts ' "to prevent an abuse of process." ' " (*Deveny, supra*, 139 Cal.App.4th at p. 426; see also *Jackson v. Pacific Gas & Electric Co.* (1949) 95 Cal.App.2d 204, 209 ["It would seem to be a travesty on justice if a litigant had inadvertently, ignorantly and erroneously stated as a fact, without fault on his part, an admission against interest, if he were to become bound thereby and would not be permitted

12

upon proper showing to correct the innocent error and assert the true fact in that regard."].)  A plaintiff "therefore may avoid the effect of the sham pleading doctrine by alleging an explanation for the conflicts between the pleadings."  (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344.)

      b.    *Analysis*

Palmore contends, as she did in the trial court, the FAC is a sham pleading that cannot be cured.  She argues (1) the FAC omits "contradict[ory]" allegations about Sparks included in "prior complaints" filed in the Glacial-Iceland action; and (2) the allegation in the FAC—and earlier complaints—that Iceland hired Vincent in August 2008 is inconsistent with Sparks allegedly having called Palmore in 2009 about hiring Vincent as a coach.  Palmore argues plaintiff gave no justification or excuse as to why she omitted the earlier factual allegations against Sparks from her FAC against Palmore.

The procedural posture of this case is unique.  In *Annie G.*, we held plaintiff could amend her pleading in the Glacial-Iceland case to state misrepresentation causes of action against Glacial based on the facts plaintiff had learned from Sparks's deposition testimony.  In partially overruling Glacial's demurrer to those causes of action, the trial court in turn found plaintiff's new allegations were "the exact allegations" she had argued on appeal that we had held were sufficient to state those claims.  Yet, in the later-filed action against Palmore, the trial court found those same alleged facts[12] were a sham pleading inconsistent with the

---

[12]    We acknowledge the 4AC's allegations about the Sparks-Palmore call are worded somewhat differently than in the FAC.  (See *ante*, fns. 4 & 5.)  The essence of the alleged facts and the

13

earlier-filed pleadings in the Glacial-Iceland case and insufficient to support misrepresentation causes of action against Palmore. The court did so even though the sufficiently pleaded 4AC had omitted the same earlier-pleaded facts about Sparks.

The allegations from the TAC that Palmore asserts are inconsistent with or contradictory to those in the FAC—including that Iceland "hired Vincent as an ice skating coach (to teach group and individual classes)" in the "beginning of August, 2008" —necessarily were before us in *Annie G.* when we decided plaintiff could amend that pleading to state misrepresentation causes of action against Glacial. Indeed, our opinion specifically repeated the TAC's allegations that, "[w]hen Vincent first arrived at Iceland, . . . Sparks . . . noted that Vincent isolated his student from other coaches and students," "knew about the incident in the locked room" at Glacial, and knew Glacial fired Vincent. (*Annie G.*) We also noted plaintiff's original complaint alleged Sparks witnessed Vincent isolating his students as early as 2008.[13] (*Ibid.*) As Palmore asserts, the TAC also alleged that "[s]ince Vincent first arrived at Iceland, Sparks had been documenting incidents relating to his inappropriate behavior with his young students."

Despite the existence of these allegations that "contradicted" the new facts plaintiff proffered on appeal— and then successfully alleged in her 4AC—we concluded plaintiff

theory of plaintiff's case against Glacial and against Palmore are essentially the same, however.

[13] The record in *Annie G.* included not only the TAC but also the three earlier versions of plaintiff's complaint in the Glacial-Iceland case.

14

could amend her misrepresentation causes of action against Glacial based on Sparks's deposition testimony. We did not grant plaintiff's motion to take evidence—or to take judicial notice—of Sparks's postjudgment deposition testimony. (*Annie G.*) Nevertheless, we considered that testimony in concluding plaintiff could amend her complaint, noting that, "on an appeal from a judgment after a demurrer has been sustained without leave to amend, the plaintiff can show, for the first time on appeal, that the complaint can be amended to state a cause of action."[14] (*Ibid.*, citing *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.) Accordingly, as Glacial's alleged liability to plaintiff is dependent on Palmore's actions, those same allegations equally support misrepresentation claims against Palmore.

Palmore argues that in *Annie G.* we did not "examine whether [p]laintiff was engaging in sham pleading that would foreclose her ability to maintain a viable cause of action." Palmore contends *Annie G.* "merely noted that based on the incomplete record before it, it was hypothetically possible." Although Glacial did not use the term "sham pleading," it made a similar argument in *Annie G.* In its respondent's brief, Glacial argued Sparks's testimony was "inconsistent with the facts alleged in [plaintiff's] four complaints": that " 'since Vincent first arrived at Iceland' in August 2008, Sparks knew about and documented incidents of Vincent's misconduct towards [plaintiff] and other young students at Iceland," yet allowed Vincent to

---

[14] In ruling on Palmore's demurrer, the trial court considered plaintiff's counsel's declaration, which attached Sparks's deposition testimony, on the issue of whether leave to amend should be granted.

15

continue coaching plaintiff.[15]  Glacial argued that, as a result, plaintiff could not allege "a viable misrepresentation claim, which requires [plaintiff] to show that Sparks was 'ignorant of the truth' about Vincent and justifiably relied upon Palmore's statement in April 2009, which resulted in [plaintiff's] damages." That is essentially the same argument Palmore makes now. We implicitly rejected that argument when we concluded plaintiff could state a misrepresentation cause of action based on Palmore's statement to Sparks in 2009 that everything was fine with Vincent.

Moreover, contrary to Palmore's contention, plaintiff explained why she omitted the allegations about Sparks from the FAC.  As Palmore notes, plaintiff filed her first complaint in these consolidated cases in 2016 and amended that complaint four times.  Nevertheless, as we noted in *Annie G.*, plaintiff did not learn of the 2009 Sparks-Palmore conversation until after the trial court had ruled on Glacial's demurrer to the TAC and plaintiff had perfected her appeal.  Plaintiff's counsel explained to the trial court that the earlier allegations about Sparks having witnessed and known about Vincent's behavior were based on information, and the FAC's allegations were based on facts that had developed later with Sparks's deposition.  Plaintiff asserts "Sparks's testimony about the call to Palmore came as a surprise to plaintiff," and "given any uncertainty as to the facts," she was

---

[15]    Glacial also argued plaintiff failed to allege Glacial's failure to warn about or to report Vincent was the proximate cause of her injury because her complaints alleged that, when Iceland hired Vincent in August 2008, Sparks " 'knew about the incident in the coaches[ ] only room and that Glacial fired Vincent.' " (Quoting from TAC.)

16

"entitled to set forth her case in alternative and inconsistent counts."

Plaintiff gave the same explanation in response to Glacial's argument in *Annie G.* In her reply brief in that appeal, plaintiff argued she had learned of Sparks's testimony after she drafted the TAC. Plaintiff described that testimony, as she does now: that "when Vincent sought to be put on staff at [Iceland], [Sparks] called . . . Palmore to ask if there was any reason he should not be allowed to teach at [Iceland]," and "Palmore responded[,] 'No, everything's fine.' " Plaintiff also explained Sparks testified she did not know about the incident at Glacial until after Iceland fired Vincent. Plaintiff further argued, as she does here, that the differing allegations were "a matter of alternative pleading and present[ ] a triable issue." We impliedly accepted plaintiff's explanation when we concluded those facts were sufficient to state misrepresentation causes of action against Glacial.

We conclude plaintiff's explanation is sufficient to avoid the sham pleading doctrine, especially given our conclusions in *Annie G.* about Sparks's testimony, and the trial court's overruling of Glacial's demurrer to plaintiff's misrepresentation claims based on almost the same allegations as were in the FAC. In essence, plaintiff amended the allegations relating to Sparks because she learned Sparks had testified she did not know about the incidents at Glacial and would have alerted Iceland had Palmore told her the truth about Vincent. Plaintiff thus amended her pleadings to conform to late-discovered facts. (Compare *Deveny*, *supra*, 139 Cal.App.4th at pp. 416, 423–424, 426–427 [sham pleading doctrine did not apply where plaintiff's counsel amended alleged basis for securities fraud action that

17

drug company failed to disclose negative clinical data to investors after learning, through further investigation and consultation with experts, that the data was inconclusive] with *Cantu, supra,* 4 Cal.App.4th at pp. 868–869, 877–878 [sham pleading doctrine applied where plaintiff in earlier interpleader action admitted he knew "defendants faced a multiplicity of claims concerning the stake" but in malicious prosecution action against defendants for improperly instigating that action alleged he was " 'informed and believed that there were no competing claims to the funds' "; having made the earlier admission, plaintiff could not "now inconsistently and falsely allege to the contrary"].) We thus agree with plaintiff that whether Sparks knew of the Glacial incident before she spoke to Palmore, or already had observed Vincent's abusive behavior, are evidentiary issues not suitable for resolution on demurrer.

Palmore argues plaintiff "does not explain why she is ignoring the portion of . . . Sparks's deposition testimony that definitively states that she was <u>not</u> vetting Vincent for any employment or staff position in 2009." At the deposition, counsel asked Sparks, "So when it came time a little bit later on for that show and [Vincent] wanting to be more involved and be a staff coach, based on knowing that he had been at Glacial . . ., you called Glacial . . . to speak with . . . Palmore, correct?" Sparks answered,

> "Right. It wasn't about him being on staff
> because I don't know that it [*sic*] exact same
> time. It was about the competition and
> him wanting to be very involved with the
> competition and personalities of the people that
> were, you know, working toward a common

18

goal. [¶] And he wanted to be more involved and so I called [Palmore] and said is there any reason we shouldn't let him be here? It was an ISI competition we were putting together and she said, 'No. Everything's fine.' "

Minutes before that testimony, Sparks had testified she called Palmore in 2009 because Vincent "wanted to be involved in the competition and he was asking to be on staff at the same time and wanted to be there more frequently, [as] opposed to [a] once a week or twice a week visiting coach."

We do not read Sparks's testimony as precluding plaintiff from alleging Sparks was "vetting" Vincent for a staff position when she called Palmore. A reasonable reading of Sparks's testimony is that she called Palmore because Vincent wanted more coaching time at Iceland, and Sparks wanted to know if Palmore knew of any reason why Iceland should not allow him to coach. For purposes of demurrer, whether—at that moment—Sparks was thinking about Vincent's desire to be an integral part of the upcoming competition, or his application to be on staff, does not change the essence of plaintiff's allegation that had Palmore answered Sparks truthfully, Iceland would not have put Vincent on staff, or inferentially, kept him on as a coach at all. Accordingly, we do not find Iceland's alleged hiring of Vincent in 2008 is inherently inconsistent with Sparks's alleged conversation with Palmore in 2009 about whether there was any reason Iceland "should not take Vincent on as a coach" or "Vincent should not be allowed to teach at [Iceland]."

Moreover, the TAC—before us in *Annie G.*—and the 4AC—that survived Glacial's subsequent demurrer—similarly alleged "Vincent was the employee" of Iceland from August 2008 to

19

December 2011.  We nevertheless found plaintiff could state negligent and intentional misrepresentation causes of action against Glacial based on Sparks's alleged conversation with Palmore in 2009.[16]  (*Annie G.*)  Specifically, we explained that, under *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066 (*Randi W.*), while "ordinarily, a recommending employer is not liable to a third person for failing to disclose negative information regarding a former employee, . . . when the recommendation . . . amounts to an affirmative misrepresentation that presents a foreseeable and substantial risk of physical harm to a third person, liability will attach." (*Annie G.*, citing *Randi W.*, at p. 1070 [defendant school district officers' unreserved recommendations of their former employee, without disclosing he had been charged with sexual misconduct, constituted affirmative misrepresentations subjecting defendants to tort liability for fraud and negligent misrepresentation (but not general negligence) when those recommendations allegedly induced another school district to hire the employee, who later sexually assaulted plaintiff].)

We concluded plaintiff similarly could allege Glacial had a duty "to not misrepresent Vincent's fitness as a coach." (*Annie G.*)  We reasoned:  "When Palmore told Sparks that everything with Vincent was fine, Palmore knew it to be otherwise, and had in fact fired Vincent for his inappropriate behavior with his minor students.  [Glacial] could also reasonably foresee that, had it disclosed Vincent's conduct with his minor students, Iceland would not have hired him.  It was also

---

[16]    Although the 4AC did not specify the call took place in 2009, we noted the 2009 timing of the call in *Annie G.*

reasonably foreseeable that Vincent might engage in those same boundary violating behaviors at Iceland, which could eventually result in a more serious assault, like what occurred here. We acknowledge these attenuating circumstances, however, for purposes of demurrer, we assume that [plaintiff's] injuries were caused by Glacial's conduct." (*Ibid*., relying on *Randi W., supra*, 14 Cal.4th at pp. 1070–1072, 1078–1079, and *Rowland v. Christian* (1968) 69 Cal.2d 108, 113.)  Our reasoning equally applies to plaintiff's misrepresentation claims against Palmore, which are based on the same alleged facts.[17]

3. ***The FAC sufficiently alleges reliance for plaintiff's three misrepresentation-based causes of action***

Both intentional and negligent misrepresentation require a showing of actual and justifiable reliance on the false representation, concealment, or nondisclosure—the element Palmore argued plaintiff did not and could not allege. (*Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1060; *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231.)  Here, the FAC alleged— as plaintiff proffered in *Annie G.*—that, when Sparks spoke to Palmore "to ascertain if there was any reason Vincent should not be allowed to teach at [Iceland]," she responded,

---

[17] As we decided *Annie G.* on an appeal from a separate action involving different defendants, it isn't per se "the law of the case" for plaintiff's action against Palmore.  Nevertheless, the Palmore action is related to, and consolidated with, the Glacial-Iceland action.  Critically, any liability as to Glacial and Palmore necessarily is based on the same set of facts.  Our reasoning and holding in *Annie G.* on plaintiff's claims against Glacial therefore equally apply to the same claims plaintiff asserts against Palmore.

21

" 'No, everything's fine' "; Palmore did not mention Vincent had been found alone with a minor in the coaches only room or "other boundary violations which had caused Glacial . . . to fire Vincent"; and "[h]ad Palmore spoken the truth, Sparks and [Iceland] would not have put Vincent on staff and he would not have been [p]laintiff's coach or been able to engage in the conduct alleged above." Thus, plaintiff alleged Palmore made a false statement about Vincent's fitness as a coach (and concealed facts demonstrating he was not fit), Sparks relied on that misrepresentation in putting Vincent on Iceland's coaching staff, and Vincent then was able to become plaintiff's coach and abuse her. (See *Chapman,* at pp. 230–231 [elements of intentional and negligent misrepresentation]; *Randi W., supra*, 14 Cal.4th at pp. 1084–1085 [under Restatement Second of Torts, sections 310 and 311, "plaintiff need only allege that her injury resulted from action that *the recipient* of defendants' misrepresentations took in reliance on them"].)

The trial court found these allegations could not establish Sparks relied on Palmore's statements in 2009 to retain Vincent. The court found the timeline made it impossible, as Vincent began working for Iceland in 2008—before the call. The court noted plaintiff's reliance argument was not supported "especially in light of the fact that in the same claim, plaintiff alleges that Sparks noted immediately after Vincent was hired, inappropriate contact of minors." That allegation was not in the FAC, however. As discussed, plaintiff made that allegation in her earlier pleadings before she learned about the Sparks-Palmore conversation.

For reasons similar to those we already discussed, we do not agree the fact that Iceland "hired" Vincent in August 2008

22

precludes Sparks from having relied on Palmore's 2009 statement in deciding to put him on Iceland's staff in 2009. As plaintiff argues, although Vincent already was working for Iceland, Sparks relied on Palmore's assertion that Vincent was "fine" to teach skating students. Had she known of the incidents at Glacial—and that he had been fired for them—as the FAC alleges, Sparks would not have put him on staff. We can infer that, correspondingly, Iceland would not have kept Vincent on in whatever capacity he was working.

The FAC does not specifically allege Iceland hired Vincent in 2008 as a visiting rather than a full-time coach. Similarly, in alleging that, "[a]s a direct and proximate cause of Palmore's misrepresentation as to Vincent's fitness as a coach for minor skaters . . . Vincent was hired to coach at [Iceland] and [p]laintiff became his student . . .," the FAC does not specify Iceland "retained" Vincent—i.e., let him stay on—or "hired" him as a permanent coach, based on Palmore's assurances. As plaintiff asserts, Sparks confirmed during her testimony that her conversation with Palmore was "during the time [Vincent] was a visiting coach and he was trying to get on staff"—in other words, be made permanent. As plaintiff notes, Sparks also testified she "would have gone straight to management and the director" had she learned of Vincent's behavior at Glacial. Plaintiff thus argues "[t]he date of any technical 'hiring' is immaterial if disclosure would have resulted in Vincent's discharge, ending or limiting his ability to control and molest [plaintiff]." We tend to agree.

Moreover, the FAC does specifically allege that, "[i]n 2009 . . . Vincent was seeking to be put *on staff*." (Italics added.) As Vincent already was coaching at Iceland, we reasonably can infer

23

a staff position was a different role from Vincent's then-current position.  The FAC alleges Sparks spoke to Palmore at that point to learn "if there was any reason Vincent should not be allowed to teach at [Iceland]."  Accordingly, although Sparks's deposition testimony shows plaintiff could amend the FAC to be clearer, in our view, no amendment is necessary.  The FAC's failure to allege the precise coaching role Vincent held at Iceland in 2008 versus after Sparks spoke to Palmore in 2009 is not fatal given the FAC's allegations that Sparks and Iceland "would not have put Vincent on staff" had Palmore "spoken the truth."

Similarly, as the trial court initially noted in its tentative ruling—and stated in its minute order—plaintiff's negligence claim against Palmore is in fact a claim for negligent misrepresentation.  As plaintiff alleged the essential facts to support a negligent misrepresentation cause of action, the court can recharacterize it as such.  (See *Quelimane, supra*, 19 Cal.4th at p. 38 ["If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer."].)

We thus conclude the FAC's allegations—although not perfectly pleaded—are sufficiently specific to apprise Palmore of the basis for plaintiff's misrepresentation claims—that had Palmore not misrepresented Vincent's fitness as a coach, Iceland would not have hired him as a "staff" coach, and he therefore would not have become plaintiff's coach at Iceland and abused her.[18]  As we noted in *Annie G.*, "the chain of causation between

---

[18]     As plaintiff notes, the allegations are no more imprecise than those alleged in the 4AC against Glacial for the same causes of action based on Palmore's statement to Sparks.

24

Palmore's statement and [plaintiff's] injuries is attenuated," but "we find it can be alleged that [Glacial] had a duty . . . to not misrepresent Vincent's fitness as a coach." Whether or not Sparks actually and reasonably relied on Palmore's statement, or Sparks should have known Vincent was a danger and should not have retained him despite Palmore's statement, are questions not before us on demurrer.

Plaintiff separately pleaded a cause of action for "Fraud and Deceit (Civil Code § 1710)" based on the same facts as her negligent and intentional misrepresentation causes of action. The trial court's minute order, incorporating its written tentative ruling, denied plaintiff leave to amend that claim because plaintiff did not address Palmore's argument that "when pleading a statutory claim for fraud and deceit (as opposed to a common law claim for intentional misrepresentation)," plaintiff "must plead that she herself relied on the statements made." Plaintiff's opposition did not mention Civil Code section 1709 or 1710[19] or address this cause of action separately from her cause of action for intentional misrepresentation. Rather, plaintiff argued she alleged the elements necessary to plead fraud under *Randi W.* As noted, *Randi W.* concluded the plaintiff could state a "fraud" (or negligent misrepresentation) cause of action against the defendants who recommended the individual who assaulted her

---

[19] Civil Code section 1709 simply codifies the common law tort of fraud. (*Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 39 [section 1709 "enshrine[es] common law 'fraudulent deceit' as a cause of action sounding in tort"].) Civil Code section 1710 defines deceit within the meaning of section 1709 to include both intentional and negligent misrepresentations. (Civ. Code, § 1710, subds. 1 & 2.)

to the school district that hired him. (*Randi W., supra*, 14 Cal.4th at p. 1070.) Relying on Restatement Second of Torts, sections 310 and 311, the court held "the writer of a letter of recommendation owes to prospective employers and third persons a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of *physical injury* to the prospective employer or third persons." (*Randi W.,* at p. 1081, italics added.) We see no reason why this holding would not apply to a statutory fraud and deceit claim under sections 1709 and 1710. (See *Lacher v. Superior Court* (1991) 230 Cal.App.3d 1038, 1043, fn. 1 ["Although the right to recover damages for fraud is codified in Civil Code sections 1709 and 1710, . . . these statutes are merely declarative of the common law."].) Accordingly, we conclude plaintiff's opposition encompassed her fraud and deceit cause of action, and the FAC sufficiently pleads that cause of action for the same reasons we have explained the FAC sufficiently pleads causes of action for negligent and intentional misrepresentation.[20]

---

[20] As we held in *Annie G.*, Glacial did not have or assume a duty to report Vincent's misconduct. For the same reasons, Palmore didn't either. Accordingly, plaintiff cannot base any of her claims on Palmore's alleged failure to report Vincent. (See also *Randi W., supra*, 14 Cal.4th at p. 1070 [holding defendants' alleged failure to report charges of former employee's improper activities "to the appropriate authorities pursuant to state statutory law fails to afford an alternate basis for tort liability in this case"].)

**4.      *We reverse the summary judgment in favor of Glacial***

As we have concluded the FAC states misrepresentation causes of action against Palmore, there no longer is any basis to support the court's order granting summary judgment in favor of Glacial. Accordingly, we need not address plaintiff's other arguments.

## DISPOSITION

The judgment against Glacial Garden Skating Arenas, LLC is reversed. The judgment against Jacqueline Palmore is reversed, and the trial court is directed to (1) vacate its order sustaining Palmore's demurrer without leave to amend and (2) enter a new order overruling the demurrer as to the first, second, and third causes of action, and sustaining the demurrer without leave to amend as to the fourth cause of action. Plaintiff is awarded her costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.

27